THE STATE OF OHIO, APPELLEE, *v.* CORNELY, APPELLANT.

(No. 77-1388—Decided October 4, 1978.)

Mr. B. Edward Roberts, prosecuting attorney, for appellee.

Mr. Robert E. Wilson and Mr. Donald H. Taube, for appellant.

*Per Curiam.* Early in the evening of July 14, 1976, Richard Keith Cornely, appellant herein, placed a call with a taxicab company in Marion, Ohio. When the cab arrived

at his residence, appellant approached it bearing a shotgun, both barrels of which were loaded. When the cab, carrying appellant, reached a wooded area, driver John Adams apparently requested payment; instead, appellant instructed Adams to give appellant his money bag, from which appellant extracted several dollars. At approximately this juncture, appellant's shotgun discharged, striking Adams in the head and causing his instantaneous death.

Appellant fled, discarding the shotgun in a field. Shortly thereafter, appellant was arrested on the charge of aggravated murder, with the specification that the murder had been committed while appellant was committing, attempting to commit, or fleeing immediately after committing or attempting to commit an aggravated robbery.

After initially denying involvement in any crime, appellant admitted such involvement and agreed to take the authorities to the location of the shotgun. Thereafter, appellant was again interrogated in jail. In the course of this questioning appellant, in a recorded statement, confessed firing the weapon which killed Adams.

A preliminary hearing was held and appellant was bound over to the grand jury. Upon his indictment, appellant entered a plea of not guilty. Appellant filed a motion to suppress the statements and confession he had given the authorities on the evening of July 14, 1976.

An initial hearing of appellant's motion on September 17, 1976, by the Hon. Robert A. Kelly, Judge of the Common Pleas Court of Marion County, resulted in the overruling of that motion. When Judge Kelly thereafter withdrew as the judge in the case, the Hon. Henry E. Shaw, Jr., Judge of the Court of Common Pleas of Delaware County, was assigned to preside in the case. Subsequently, a second motion to suppress the confession was filed and a hearing was held before Judge Shaw on October 6th and 8th, 1976. Appellant's motion again was overruled.

Appellant's cause came on for trial to a jury and he was found guilty of aggravated murder and of the specification thereto.

On February 18, 1977, the cause came on for a mitigation hearing, at which no mitigating circumstances were found. Appellant was sentenced to death, the sentence to be carried out on June 22, 1977. The execution was stayed by the trial court pending all appeals.

The cause was submitted on appeal to the Court of Appeals and the judgment of the trial court was affirmed.

The cause came before this court as a matter of right.

I.

Appellant contends that when a trial court dismisses prospective jurors in contradiction to the mandates of R. C. 2313.16[1] and 2313.17,[2] their dismissal denies a defendant his right to be tried by a jury of his peers. The record does not show that appellant raised any motion prior to trial concerning the jurors.

Crim. R. 12(B) provides, in relevant part:

"Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. * * *"

Crim. R. 12(G) provides, in relevant part:

"Failure by the defendant to raise defenses or ob-

---

[1]R. C. 2313.16 provides, in relevant part:

"* * * [T]he court of common pleas shall not excuse a person, liable to serve as a juror and drawn and notified, unless it is shown by the oath of the juror, or if he is unable to attend, by the oath of another person acquainted with the facts, that:

"(A) He is then necessarily absent from the county, and will not return in time to serve;

"(B) The interests of the public, or of the juror, will be materially injured by his attendance;

"(C) He is physically unable to serve;

"(D) His wife, or a near relative of himself or his wife, has recently died or is dangerously ill."

[2]R. C. 2313.17 provides, in relevant part:

"A person who has been notified to attend as a juror and who makes application to be excused * * * shall present his excuse in open court to the judge. If such person cannot personally attend, he shall send his excuse by a person capable of making the necessary proof in relation to his claim to be excused. * * *"

jections * * * shall constitute waiver thereof * * *."

Furthermore, appellant's argument is unpersuasive in view of *Bond* v. *State* (1872), 23 Ohio St. 349, 355-56. The third paragraph of the syllabus in *Bond* explains that it is not reversible error for a trial court, prior to the date set for a criminal trial, to discharge jurors on grounds of personal excuse and upon their unsworn statements; nor is it reversible error for the court to refuse to issue attachments against nonattending jurors.

## II.

Appellant submits that when a trial court hears a motion to suppress evidence and the motion is erroneously overruled, it is prejudicial error for the court to conduct a second hearing on the same motion, wherein the prosecution is permitted to attempt to cure the errors, defects and omissions of the first hearing.

Appellant neglected to raise this issue at trial or before the Court of Appeals. This court will not ordinarily consider a claim of error which a defendant has failed to raise before the appellate court and which was not considered by that court. *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 364 N. E. 2d 1364, paragraph two of the syllabus; *State* v. *Barker* (1978), 53 Ohio St. 2d 135, 147-48, 372 N. E. 2d 1324.

## III.

Appellant argues that the taking of his confession by law enforcement officers, after he had inquired about court-appointed counsel, renders his statement inadmissible at trial.

At the October 6, 1976, hearing, appellant testified that he already had repeatedly been given warnings pursuant to *Miranda* v. *Arizona* (1966), 384 U. S. 436, when, while in custody, he was asked by a deputy sheriff with telephone receiver in hand whether he wished to confer with counsel: "* * * I said, yes. He asked who they were, and I told him I didn't know. I had never been in trouble before."

Appellant testified that he did not at that juncture ask

for an attorney, but did inquire concerning court-appointed lawyers. The deputy in question, however, testified: "Not at any time that I talked to the Defendant did he request to see an attorney."

It was following this alleged incident that appellant made the challenged statements to the authorities. Both appellant and the deputy testified that appellant had been informed of his rights under *Miranda*.

The record discloses fundamentally divergent accounts of the events in question. The trial court properly could conclude that appellant had been fully advised of his rights, had requested no attorney and had failed to indicate that he desired to remain silent.

Appellant also notes that upon his apprehension, his father contacted an attorney who apparently intended to represent appellant. The attorney arrived at the jail where, appellant declares, the attorney was "confronted" for several minutes by the authorities, thereby failing to see appellant until he had made his confession.

However, the record indicates that the attorney chatted with the authorities, concerning appellant, over "a cup of coffee." The record proves neither that the attorney insisted upon seeing appellant, nor that appellant requested seeing any attorney.

The cases relied upon by appellant are distinguishable from the controversy at bar. *Carnley* v. *Cochran* (1962), 369 U. S. 506, related to an illiterate criminal defendant actually brought to trial without counsel: "We hold that petitioner's case was one in which the assistance of counsel, unless intelligently and understandingly waived by him, was a right guaranteed him by the Fourteenth Amendment." *Id.*, at pages 512-13. Just such a waiver obtained in the case at bar.

Appellant's reference to *Brewer* v. *Williams* (1977), 430 U. S. 387, 404, in this respect, consists merely of a citation in *Brewer* to *Carnley*. Moreover, *Brewer* related to information elicited from a criminal defendant alone with detectives on a 160-mile drive in a police car after

the defendant's attorney had been denied permission to ride along and had clearly stated to officers that there was to be no interrogation during the trip; the defendant obviously had endorsed that agreement and allegedly "waived" his right to counsel only after being alone with the authorities over his counsel's objections.

## IV.

Appellant further avers that because he gave his confession under inducement, the confession is tainted and was inadmissible at trial.

"In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. (Second paragraph of the syllabus in *State* v. *Edwards,* 49 Ohio St. 2d 31, approved and followed.)" *Barker, supra,* paragraph two of the syllabus.

A review of the record of the cause at bar does not establish that appellant's confession was obtained by means of inducement or otherwise was involuntary.

## V.

Appellant submits that because he allegedly appeared to misunderstand his *Miranda* warnings, all interrogation ought to have ceased until it was clear to him both that he had the right to counsel and that he grasped what method was proper to obtain counsel; appellant contends that his confession, obtained in the face of his misunderstanding, was inadmissible at trial. This proposition of law was not offered, pursuant to Crim. R. 12, in a motion to suppress prior to trial. Moreover, the record before us fails to establish that appellant had less than a thorough comprehension of his right to have appointed counsel.

## VI.

Appellant contends that R. C. 2929.04(B) imposes cruel and unusual punishment in violation of constitutional

guarantees, the mitigating factors recognized therein being overly restrictive. Appellant states further that R. C. 2929.04(B)(3), treating as a mitigating factor the fact that the offense was primarily the product of the defendant's psychosis or mental deficiency, affords an illusory mitigating factor. Appellant urges also that the imposition of the death penalty in this state is violative of constitutional guarantees in that there obtains no system of appellate review of sentencing insuring that capital punishment in a particular case is warranted, and is comparable with sentences imposed in similar cases.

In light of the decisions of the United States Supreme Court in the cases of *Lockett* v. *Ohio* (1978),———U. S. ——, 57 L. Ed. 2d 973, and *Bell* v. *Ohio* (1978), —— U. S. ——, 57 L. Ed. 2d 1010, wherein it was ruled that R. C. 2929.04(B) unconstitutionally limited the range of mitigating circumstances which could be considered by a sentencing court, this court, in conformity with the mandates issued by the Supreme Court in those cases, modified the judgment of the Court of Appeals in the case at bar by reducing the imposed death sentence to life imprisonment. Therefore, that portion of the judgment of the Court of Appeals which affirmed appellant's sentence of death has already been ruled upon, and further discussion of appellant's propositions of law is unnecessary.

The judgment of the Court of Appeals with respect to the conviction of the appellant is affirmed and, as heretofore noted, the death sentence imposed upon appellant has been modified to life imprisonment.

*Judgment accordingly.*

HERBERT, CELEBREZZE, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

LEACH, C. J., not participating.