THE STATE OF OHIO, APPELLEE, *v.*
MABRY, APPELLANT.

(No. 43649—Decided July 15, 1982.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. Christopher D. Stanley,* for appellant.

ANN MCMANAMON, J. Danny Mabry, the appellant, and two friends, James Young and Clint Walker, were riding around in the city of Cleveland in Walker's car during the early morning hours of May 27, 1980 when one of them suggested that· they rob the East 4th Street Bookstore. Walker drove them to the bookstore and once inside, appellant remained in the front, while Young went to the rear movie cubicle area and Walker stood somewhere between the two. The events which then transpired resulted in the shooting death of the bookstore owner, Milton Goldstein, and serious physical injuries to a customer, Dr. Anthony Nakhle.

James Young, upon reaching the rear of the store, approached Nakhle, with a gun drawn, demanding the doctor's money and personal effects. An altercation ensued during which Nakhle was shot. The sound of this backroom struggle alerted Goldstein, who ran to Nakhle's assistance carrying a gun. Several shots were fired, one of which caused Goldstein's death. James Young, who had himself been wounded, Clint Walker, and the appellant ran out of the store and drove away before police arrived.

Appellant was implicated in the incident through information provided to police by an informant and he was later arrested on a warrant at his grandmother's house. Subsequent to his arrest, appellant made an oral and written statement to police in which he admitted his presence in the bookstore during the robbery and shooting, but he averred that he did not "go there to hurt no one." He told police that he did not have a gun at the time of the robbery and that he "didn't see any" guns on Walker or Young.

Appellant was convicted of the aggravated murder of Milton Goldstein, the attempted murder of Dr. Nakhle and aggravated robbery. Appellant's motions for new trial and reconsideration were overruled by the trial court. Appellant appeals all three convictions and submits the following assignments of error:

"I. The defendant was denied a fair trial by the refusal of the trial court to instruct the jury on the lesser included offense of involuntary manslaughter.

"II. The defendant was denied a fair trial by the refusal of the trial court to instruct the jury on the lesser included offenses of felonious assault and aggravated assault.

"III. The trial court committed reversible error by instructing the jury that they could find the defendant guilty if the state proved beyond a reasonable doubt that his accomplises [*sic*] possessed the requisite mental state.

"IV. The defendant was denied a fair trial by the trial court's instructions on aiding and abetting.

"V. The defendant's conviction for aggravated murder and attempted murder were based upon legally insufficient evidence and the trial court erred in not granting the defendant's Rule 29 motion to acquit.

"VI. The admission into evidence of the defendant's statement violated his right to counsel.

"VII. The defendant was denied a fair trial by the refusal of the trial court to allow a defense witness to testify."

I

The court will first consider the third and fourth assignments of error in which appellant contends that the jury was improperly instructed on the three offenses with which he was charged.

Counsel for appellant submitted a motion for special jury instructions to the court regarding appellant's intent to kill, which motion was heard and overruled.

Appellant was indicted for aiding and abetting aggravated murder. At trial, the court charged the jury on aggravated murder as follows:

"It must be established in this case

that at the time in question there was present in the mind of the defendant, *or another or others whom he aided and abetted,* specific intention to kill Milton Goldstein." (Emphasis added.)

The court also gave the following charges on aiding and abetting:

"A person who knowingly and purposely aids, helps, assists or associates himself with another in the commission of a crime is regarded as if he were the principal offender and is just as guilty as if he, personally, performed every act constituting the offense.

"When two or more persons have a common purpose to commit a crime, and one does one part, and a second performs another, those acting together are equally guilty of the crime.

"Where two or more persons *have a common purpose to commit a crime and in a continuous sequence of events other crimes are committed, all said persons are responsible for all the crimes which happen in a continuous sequence of events even though all said* persons were not physically present when the other crimes were committed." (Emphasis added.)

The aggravated murder statute, R.C. 2903.01(B)[1] prohibits a person from "purposely causing the death of another while committing * * * a robbery." "Purpose" under R.C. 2901.22(A)[2] is the specific intent to cause a certain harm. The Ohio complicity statute, R.C. 2923.03, under which appellant was charged as an aider and abettor provides in part:

"(A)  No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

"* * *

"(2)  Aid or abet another in committing the offense."

In *State* v. *Scott* (1980), 61 Ohio St. 2d 155 [15 O.O.3d 182], the defendant was charged with kidnapping and aiding and abetting an aggravated murder. The court provided three considerations for a proper jury analysis of the required purpose to cause death on the part of an aider or abettor. The court held:

"A jury can infer an aider and abettor's purpose to kill where the facts show that the participants in a felony entered into a common design and *either* the aider or abettor knew that an inherently dangerous instrumentality was to be employed to accomplish the felony, *or* the felony and the manner of its accomplishment would be reasonably likely to produce death." *Id.* at 165.

During the trial in *Scott,* the court, in response to a jury question, stated that if the defendant was guilty of the crime of kidnapping and the victim died, even though defendant had no knowledge of or participation in the murder, he was also guilty of aiding and abetting the murder. The Supreme Court held that such instructions do not properly define purpose to kill, which is the specific intent required to convict an accused of murder. The Supreme Court in *Scott* noted that the instruction improperly relieved the state of its duty to prove defendant's purpose to kill beyond a reasonable doubt.

In the instant case, the jury charge on aggravated murder, when read in conjunction with the charge on aiding and abetting, was improper. In essence, the jury was instructed that if appellant

[1] R.C. 2903.01(B):
"No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape."

[2] R.C. 2901.22(A):
"A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

entered into a common design to rob, he was liable for all subsequent acts, regardless of his knowledge or participation in them, so long as they formed a continuous sequence of events. The court failed to mention the second or third prong mandated by *Scott, supra,* which would be necessary for a jury reasonably to infer that appellant possessed a purpose to kill.

The court's instruction on aiding and abetting attempted murder contained the same defect. In addition to the charge on aiding and abetting, the court gave the following charge on attempted murder:

"A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question, there was present in the mind of the defendant, or *another, or others whom he aided and abetted,* a specific intention to attempt to kill Dr. Anthony Nakhle." (Emphasis added.)

Attempted murder, like murder, requires purpose to kill. R.C. 2903.02. The court's instruction absolved the state from establishing appellant's specific intent to kill Dr. Nakhle and permitted the jury to convict appellant upon a finding that he had entered into a common design to rob and that either one of his friends, James Young or Clint Walker, had the requisite intent to kill. The charge required no futher finding of appellant's mental state.

In its charge on aggravated robbery, the court gave the jury the following instructions in addition to its charge on aiding and abetting:

"Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence, and you will determine from these facts and circumstances whether there existed at the time in the mind of the defendant or *other, or others whom he aided and abetted, an awareness or belief that he obtained money or property without the consent of the owner.* (Emphasis added.)

"A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in *the mind of another or others whom he aided and abetted,* a specific intention to obtain money or property and deprive the owner of such money or property." (Emphasis added.)

Aggravated robbery, as defined in R.C. 2911.01, contemplates a precisely stated degree of defendant's culpability.[3] *State* v. *Bumphus* (1976), 53 Ohio App. 2d 171 [7 O.O.3d 319]. The instructions should have included a charge that Danny Mabry knowingly assisted others in depriving an owner of his property. R.C. 2913.02(A).[4] "Knowingly" is awareness that one's conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22. The instructions on aggravated robbery once again permitted the jury to find appellant guilty if any one of his companions, rather than appellant himself, possessed the requisite mental state.

The court committed prejudicial error by permitting the jury to find appellant guilty of aggravated murder, attempted murder and aggravated robbery without finding that appellant possessed the culpable mental state required for each of these offenses.

---

[3] R.C. 2911.01, aggravated robbery, refers to theft offenses in R.C. 2913.01, the elements of which are provided in R.C. 2913.02.

[4] "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3) By deception;

"(4) By threat."

Appellant's third and fourth assignments of error are well taken.

## II

Appellant's fifth assignment of error is that the evidence was insufficient to support a conviction for aggravated murder and attempted murder.

The court overruled appellant's motion for a directed verdict of acquittal at the close of the state's case.

Crim. R. 29 provides in pertinent part:

"(A) The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *"

In *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261 [9 O.O.3d 401], the Supreme Court held that the standard set out in Crim. R. 29 is identical to Fed. R. Crim. P. 29 and stated:

"An issue will be presented to the jury, under the federal rule, if the evidence, viewed in the light most favorable to the government is such that 'a reasonable mind *might* fairly find guilt beyond a reasonable doubt * * *.' " *Id.* at 263.

The evidence presented against appellant, when construed in the light most favorable to the state, was such that reasonable minds might find that each material element of aggravated murder and attempted murder was proved beyond a reasonable doubt. Based on the testimony, the jury could reasonably have found that appellant had the purpose to kill. Applying the standard derived from *State* v. *Scott, supra,* the jury could reasonably have inferred that appellant, Young and Walker entered into a common design to rob the East 4th Street Bookstore. Appellant's written statement avers that Walker proposed the idea, that appellant accompanied his friends into the store and remained throughout the entire robbery. Appellant's complicity as a lookout man could be inferred from his admission as to his participation:

"I was looking at a book, watching the front."

Appellant commented to police that the robbery:

"* * * should not have gone down. Because it didn't look right. There was too many bystanders around, and I could have got killed. I didn't want me or anyone else to get killed or hurt. That's what I mean. A bullet don't have no name."

The jury could reasonably have construed these statements, not only as self-serving protestations on appellant's part, but also as an indication that appellant was aware that the commission of a robbery was contemplated. In addition, the jury could reasonably have inferred from the evidence that the appellant, in setting out to commit a robbery with his friends, was aware that force, either a gun or some other dangerous instrumentality, was to be used. Appellant did not deny that there were guns on the persons of his companions, but merely stated that "he didn't see any."

The court finds that the trial court did not err when it denied appellant's motion for a directed verdict of acquittal. Appellant's fifth assignment of error is therefore overruled.

## III

Appellant contends in his first and second assignments of error that the court erred in refusing to instruct the jury on lesser included offenses.

At the close of the testimony, appellant requested that the court instruct the jury on involuntary manslaughter, a lesser included offense of aggravated murder, and on felonious assault or aggravated assault, lesser included offenses of attempted murder. The court refused

to give any of these requested instructions.

A trial court must charge on a lesser included offense where the jury may reasonably infer from the testimony presented that an element of the greater offense has not been established beyond a reasonable doubt, but that the facts may reasonably support the elements of a lesser included offense. *State* v. *Solomon* (1981), 66 Ohio St. 2d 214 [20 O.O.3d 213]. In *State* v. *Wilkins* (1980), 64 Ohio St. 2d 382 [18 O.O.3d 528], the court stated:

"* * * the trier of fact will not be permitted to consider a lesser included offense *unless the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements,* which, by themselves, would sustain a conviction upon a lesser included offense." (Emphasis added.) *Id.* at 388.

Aggravated murder requires purpose to kill while committing or attempting to commit aggravated robbery. R.C. 2903.01. R.C. 2903.04(A) defines involuntary manslaughter:

"No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony."

The facts presented at trial support appellant's participation in a robbery, a felony. Based upon conflicting testimony, the jury might have found that appellant lacked the purpose to kill Goldstein as required for aggravated murder, but that nevertheless in committing the robbery, defendant caused Goldstein's death. In *Scott, supra,* the Supreme Court held that the failure to instruct the jury on involuntary manslaughter was prejudicial error. In *Scott,* the defendant was charged with aiding and abetting aggravated murder and kidnapping. The court held that since the jury could have found that the evidence did not establish defendant's purpose to kill the victim beyond a reasonable doubt, the court should have included an instruction on involuntary manslaughter as a proximate result of the commission of a felony. For the same reason, the court should have charged the jury on the lesser included offense of involuntary manslaughter in the case at bar.

In the instant case, appellant was charged with the attempted murder of Dr. Nakhle. R.C. 2903.02[5] and 2923.02[6] proscribe an attempt to cause the death of another purposely. Felonious assault, in contrast, is defined as knowingly causing serious physical harm to another. R.C. 2903.11(A)(1). Dr. Nakhle, the sole eyewitness to the incident, testified that he grappled with his assailant, and that, in the course of the altercation, Dr. Nakhle received sharp blows to his head and ultimately, a gun shot wound on his forearm. As previously indicated, under *Scott, supra,* a jury may either accept or reject an inference of defendant's purpose to kill where certain requirements are met. In the instant case, the jury could have reasonably chosen to reject that inference and have found that appellant did not have the purpose to kill Dr. Nakhle. Nevertheless, the jury reasonably could have inferred from the facts presented that appellant knowingly caused serious physical harm to Dr. Nakhle. A jury instruction on felonious assault was therefore warranted.

However, appellant's contention that

---

[5] R.C. 2903.02(A):

"No person shall purposely cause the death of another."

[6] R.C. 2923.02(A):

"No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense."

the court should have given an instruction on aggravated assault as a lesser included offense of attempted murder is without merit. Aggravated assault occurs only when a person, under extreme emotional stress, brought on by serious provocation, is incited to use deadly force and knowingly causes physical harm to another. In *State* v. *Foster* (1979), 60 Ohio Misc. 46 [14 O.O.3d 444], the court defined "serious provocation" as follows:

"Provocation, to be serious, must be reasonably sufficient to bring on extreme emotional stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the Court must consider the emotional and mental state of this defendant and the conditions and circumstances that surrounded him at the time." *Id.* at 57.

The testimony in the case at bar does not support an inference of serious provocation, an essential element of aggravated assault. All the evidence presented clearly indicates that the assailant's attempt to rob Dr. Nakhle brought about the confrontation which resulted in Dr. Nakhle's injury. The court was therefore justified in excluding the requested charge on aggravated assault.

Appellant's first and second assignments of error are well taken only with respect to the jury charges on involuntary manslaughter and felonious assault.

## IV

Appellant's sixth assignment of error is that appellant's written statement made to police after his arrest was improperly admitted into evidence in violation of his right to counsel.

A pretrial hearing was held upon appellant's motion to suppress the statement at which Christopher Stanley, appellant's attorney, testified that he had been called on the phone by appellant's mother and asked by her to represent the appellant. Stanley subsequently called the police between 10:00 and 11:00 o'clock the same morning and told Lt. Kovacic that he was appellant's attorney. The court asked Stanley, "Did you say anything about not taking a statement from him, or anything?" to which Stanley replied, "I don't believe I used those words explicitly."

Appellant testified that at about 11:45 a.m., the police took his statement without informing him that counsel had been retained for him. Furthermore, appellant testified that he was never read his *Miranda* rights and that he was denied a request for an attorney and permission to make a phone call.

However, appellant admitted that he had read the admonitions as to his *Miranda* rights and acknowledged them in writing before making his statement to the police officers.

Detective Cudo, who took appellant's statement, testified that he had read appellant his rights from a card and informed him of the charges at the time of his arrest. Detective Cudo stated that on the day of the interrogation he fully informed the appellant of his rights pursuant to *Miranda* v. *Arizona* (1966), 384 U.S. 436 [36 O.O.2d 237].[7]

---

[7] Detective Cudo testified that he admonished appellant as follows:

"A. Danny Mabry, you will be charged with aggravated murder, aggravated robbery, attempted aggravated murder.

"Before making any written statements that may be used against you at the time of your trial, we wish to repeat the instructions issued prior to oral interrogation that you have the right to counsel, appointed or retained, before interrogation; you have the right to remain silent, and, anything you say may be used against you. You have the right to have an attorney present while making this statement.

"Then there are two questions. The first question is:

Appellant argues, in effect, that in protecting Mabry's constitutional right to counsel, the police had an affirmative duty to inform him that Stanley had been retained as counsel for the appellant and further to refrain from this phase of their investigation upon learning that appellant was represented by counsel.

In *Brewer* v. *Williams* (1977), 430 U.S. 387, the Supreme Court scrutinized the activities of police in questioning a suspect after counsel was retained. The facts in *Brewer* relate to a confession which was obtained by detectives from a defendant while they were travelling alone with him in a car. The defendant had retained a lawyer prior to the trip, who had advised defendant that he should not talk to police until after defendant and the lawyer had consulted. The lawyer retained by defendant also personally contacted the police and received their assurances that his client would not be questioned during the trip. Defendant was informed of this agreement. While in the automobile, defendant, acting on the advice of counsel, repeatedly requested to see his attorney before making any statement to police. Despite these assertions of his right to counsel and the agreement between the police and defense lawyer that there would be no interrogation during the trip, the officers deliberately and designedly sought to elicit incriminating statements from the accused, without first giving him his *Miranda* rights. The *Brewer* court found that defendant's right to counsel had been violated and that his statements made to police were inadmissible.

The case at bar is easily distinguished from the *Brewer* case. The appellant had not consulted any lawyer, nor relied upon the advice of his attorney prior to inter-rogation. Moreover, there is no evidence that the police and appellant's counsel agreed that the accused would not be interrogated. The record further shows that according to Detective Cudo's testimony, appellant was fully informed of his rights.

In determining whether appellant waived his right to counsel, the state must prove "an intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst* (1938), 304 U.S. 458, at 464. Thus, where the state is able to meet this burden, a criminal defendant may, even without notice to counsel, make a statement. *Brewer* v. *Williams, supra.*

The record discloses fundamentally divergent accounts of the events in question. The trial court could properly conclude from the evidence presented that the state had met its burden; that appellant had been fully apprised of his rights orally and had also read a written notice containing his rights; and that appellant had made no request for an attorney. Furthermore, in determining whether the confession was voluntarily given, the court heard evidence regarding the appellant's condition at the time of making the statement, appellant's age and education, and the circumstances of the interrogation. Thus, the court applied the proper standard in considering the totality of the circumstances. (See *State* v. *Cornely* [1978], 56 Ohio St. 2d 1 [10 O.O.3d 1]; *State* v. *Edwards* [1976], 49 Ohio St. 2d 31 [3 O.O.3d 18].)

This court finds that as a matter of law, although Stanley did inform /the police that he was representing the appellant, such knowledge alone did not prohibit the police from properly conducting an interrogation. The record supports the trial court's conclusion that prior to ques-

---

" 'Now, do you understand this?' And the answer is signed by Danny Mabry, 'Yes,' and the second question is 'Do you care to make a statement?' and the answer is signed, 'Yes,' and, then, the signature of Danny Mabry.

"Q. [The prosecutor] Did he read along with you when you advised him of his rights in this particular instance?

"A. Yes."

tioning appellant was read his rights by Detective Cudo, that appellant comprehended those rights and knowingly chose to waive his right to counsel. Under the facts of this particular case, appellant was not denied his right to counsel.

The court finds this assignment of error to be without merit.

## V

The final assignment of error is that appellant was denied a fair trial by the refusal of the trial court to permit a defense witness to testify.

At trial, Stanley, attorney for the appellant, requested permission of the court to call himself as a witness on behalf of his client. Upon denial of this application by the court, Stanley proffered on the record that had he been permitted he would have testified that he telephoned the investigating police officers before they interrogated appellant and that despite the fact that he told police he was appellant's lawyer they went ahead with an interrogation of appellant without informing him of their intent.

Stanley indicated that his purpose in introducing this testimony was to raise an inference of coercion and pressure by police on appellant which would affect the credibility of the statement itself.

Although the court had already ruled on the voluntariness of appellant's statement at its hearing on the motion to suppress, that ruling does not foreclose the right of an accused to present evidence at trial on the issue of credibility and weight

to be given to the statement. See *State* v. *Cron* (1967), 14 Ohio App. 2d 76 [43 O.O.2d 201]; *Jackson* v. *Denno* (1964), 378 U.S. 368 [28 O.O.2d 177].

Evid. R. 601 provides that every person, with limited exceptions, is competent to be a witness. Although exception is made with respect to the competency of both judges and jurors who wish to testify at a trial in which they are sitting, no exception is made with respect to attorneys.

However, in determining the competency of any attorney to testify, the court must also give consideration to possible violations of the Code of Professional Responsibility in order to prevent a miscarriage of justice. *In re Appeals of Richardson* (March 15, 1979), Cuyahoga App. Nos. 38566 *et seq.*, unreported; see, also, *State* v. *Cooper* (1980), 63 Ohio Misc. 1 [17 O.O.3d 308].

DR 5-102 provides, in part, as follows:

"(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representations and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4)."

Appellant does not contend that he qualifies under any of the exceptions noted in DR 5-101(B)(1) through (4).[8]

A full examination of the record in-

---

[8] "DR 5-101(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

"(1) If the testimony will relate solely to an uncontested matter.

"(2) If the testimony will relate solely to a matter of formality and there is no reason to

believe that substantial evidence will be offered in opposition to the testimony.

"(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

"(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

dicates that Stanley believed that he "ought to" be called as a witness. Stanley had presented the same evidence at the pretrial hearing on the motion to suppress on September 22, 1980. A jury was impanelled on September 23, 1980, and the trial proceeded. It was on the morning of September 25, 1980 Stanley informed the court that he wished to testify on behalf of appellant. The court denied such request and Stanley proffered his testimony for the record on September 26, 1980 as the trial ended.

If Stanley actually considered that his testimony was necessary to insure the protection of his client's rights and raise an inference of police coercion, he should have taken his early opportunity during trial preparation to withdraw as counsel in order to appear as a witness in the case.

The court finds that the trial court did not abuse its discretion in refusing to permit Stanley to testify at trial. Appellant's seventh assignment of error is therefore overruled.

*Judgment reversed and*
*cause remanded.*

JACKSON, J., concurs.

PRYATEL, J., concurs in judgment only.

JACKSON, J. I concur with the decision of this court with respect to disposition of all seven errors assigned by appellant. My concurrence with the disposition of assignment of error number seven, which charges that defendant was denied a fair trial by the refusal of the trial court to permit a defense witness to testify, is predicated upon a different rationale.

Defense counsel offered to testify that he had telephoned the police station on the morning of April 19, 1980, and informed the investigating detective that he had been retained as counsel for the appellant. Later that morning, without informing defense counsel, the police obtained a partial confession from the appellant.

This evidence is relevant to the issue of whether the Sixth Amendment rights of appellant were violated. It does not bear on the reliability of appellant's confession or on the issue of his guilt.

Accordingly, the exclusion of the testimony of defense counsel as part of the defendant-appellant's case in chief by the trial court was not error. The seventh assignment of error was properly overruled.

ANN MCMANAMON, J., of the Cuyahoga County Court of Common Pleas, was assigned to the Eighth Appellate District pursuant to Section 5(A)(3), Article IV, Constitution.