JOURNAL ENTRY AND OPINION
After a trial to the bench, Defendant-appellant Jamal Williams was convicted of murder in violation of R.C. 2903.02, with a firearm specification. The appellant was sentenced to a term of incarceration of three years for the firearm specification and a consecutive term of fifteen years to life for the offense of murder.
On October 12, 1999, the appellant shot and killed the victim, Kevin Griffin. Stippling was present on the clothing of Mr. Griffin, indicating that he was shot by a firearm that was within 24 inches of his person. The record reveals that there was a group of people congregated in the parking lot of the Mt. Hermon Baptist Church. At some point early in the evening Ms. Velvet Thorpe drove through the parking lot. The victim was walking through the parking lot at the same time and he spoke with Ms. Thorpe. Ms. Thorpe then left the parking lot and the victim walked over to join the group.
At some time later in the evening the appellant walked into the parking lot and asked to speak to the victim in private. The two walked away from everyone else and for approximately ten minutes entered into a peaceful discussion. The conversation ended and the men were walking back to the group when Ms. Thorpe reentered the scene. Ms. Thorpe walked up to the victim and began yelling at him that he had disrespected her for the last time. She was attempting to strike Mr. Griffin with her hand, but he blocked her attempt. The appellant intervened and an altercation ensued between the appellant and Mr. Griffin.
One eyewitness, Christopher Mock, testified that the appellant pushed the victim and then pulled out a gun (T. 138, 139). The witness did not await further events. While he was fleeing he heard two shots. Mr. Mock ran to his grandmother's apartment to call 911. He later learned that Mr. Griffin was dead.
The other eyewitness who testified was William Anglen. He testified that although the first physical contact was between Mr. Griffin and Ms. Thorpe, the resulting tussle was Griffin, Thorpe, and the appellant. At first the three were wrestling, no one was really hitting or punching, and then it was the appellant and the victim fighting. Mr. Anglen observed the appellant down on the ground and Mr. Griffin on top of him. Ms. Thorpe then jumped on the back of Mr. Griffin and was hitting him. The gun was first observed at this point (T. 314). Mr. Anglen could not testify as to who pulled the gun, but as he fled across the parking lot he turned and observed the appellant shoot Mr. Griffin. Mr. Griffin was standing with his hands in a defensive posture before his face. After the shot, the appellant and Ms. Thorpe fled the scene separately. Mr. Anglen also called 911.
At the close of the trial, the court noted that there were four eyewitnesses who were not directly involved with the shooting, but that only two testified. The court specifically found these two witnesses to be credible and not biased against the appellant. In its ruling, the court essentially found that although it is unknown exactly how the fight started, and it is unknown who first drew the gun, that it was the appellant who aimed the gun at Mr. Griffin and pulled the trigger. The fact that the appellant and Ms. Thorpe fled led to the conclusion that the appellant did not feel justified in his actions.
The court found that there was no question that the appellant, using a firearm, knowingly shot and knowingly caused serious harm to Mr. Griffin. The court considered the question of whether the appellant had committed a felonious assault or an aggravated assault. The court found that there was no provocation by the victim serious enough to justify the use of deadly force. The court found the appellant had caused the death of Mr. Griffin as a result of the commission of a felonious assault, and therefore, guilty of murder.
The appellant asserts only one assignment of error:
THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE.
The appellant argues that the killing of the victim was an aggravated assault and not a felonious assault. Thus, the appellant contends that his offense was voluntary manslaughter and not murder. The appellant contends that there was sufficient provocation such that he should not have been convicted of felonious assault.
In State v. Thompkins (1997), 78 Ohio St.3d 380 the Court illuminated its test for manifest weight of the evidence by citing to Black's Law Dictionary (6 Ed. 1990) at 1594:
 Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
Thus, as the concurring opinion noted, when deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion. The only special deference given in a manifest weight review attaches to the conclusion reached by the trier of fact. Thompkins, (Cook, J., concurring) citing to State v. DeHass (1967),10 Ohio St.2d 230.
R.C. 2903.02(B) states that no person shall cause the death of another as a proximate result of the offender's committing an offense of violence that is a felony of the first or second degree. In the matter at hand, the appellant was convicted of murder based upon the trial court's finding that he committed a felonious assault against the victim. Felonious assault as set forth in R.C. 2903.11(A)(2) is a second degree felony and prohibits an individual from knowingly causing physical harm to another by means of a deadly weapon.
By contrast, aggravated assault is a fourth degree felony and is defined in R.C. 2903.12. In the statute, the legislature proscribed behavior that results in serious physical harm to another by means of a deadly weapon while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force. Therefore, had the trial court herein found the underlying felony to have been an aggravated assault, the appellant would have been guilty of voluntary manslaughter as defined in R.C. 2903.03, and not murder.
In State v. Deem (1988), 40 Ohio St.3d 205 the Supreme Court found that aggravated assault contains elements which are identical to the elements defining felonious assault except for the additional mitigating element of serious provocation. In State v. Rhodes (1992), 63 Ohio St.3d 613 the Supreme Court of Ohio held that the defendant bears the burden of persuading the fact finder, by a preponderance of the evidence, that he or she acted under serious provocation.
In Deem, supra, the court also held that provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time. Deem, citing to State v. Mabry (1982), 5 Ohio App.3d 13.
In State v. Shane (1992), 63 Ohio St.3d 630, the court held that whether the mitigating circumstances of provocation are shown in a case, and therefore, whether the evidence presented would reasonably support a conviction for voluntary manslaughter, depend on whether the terms of the voluntary manslaughter statute are met. The voluntary manslaughter statute makes clear that the sudden passion or sudden fit of rage must be "brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force * * *." The Shane court found the pertinent question which must be answered in each case is: How much provocation is "reasonably sufficient" provocation? The court held:
 An inquiry into the mitigating circumstances of provocation must be broken down into both objective and subjective components. In determining whether the provocation is reasonably sufficient to bring on sudden passion or a sudden fit of rage, an objective standard must be applied. Then, if that standard is met, the inquiry shifts to the subjective component of whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage. It is only at that point that the "* * * emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time * * *" must be considered. Deem, supra, paragraph five of the syllabus. If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction. In that event, the objective portion of the consideration is not met, and no subsequent inquiry into the subjective portion, when the defendant's own situation would be at issue, should be conducted.
 The provocation must be reasonably sufficient to incite the defendant to use deadly force. For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. Once the defendant has been sufficiently provoked by the victim, it may be proper to label the conduct from that point onward "understandable." See 2 LaFave Scott, Substantive Criminal Law (1986) 256, Section 7.10. Our criminal law recognizes that the provoked defendant is less worthy of blame than the unprovoked defendant, but the law is unwilling to allow the provoked defendant to totally escape punishment. The jury, because it has the ability to find the sufficiently provoked defendant guilty of voluntary manslaughter, rather than murder, is able to exercise the value judgment provided by the law in these circumstances.
The issue presented sub judice is whether or not, as the appellant contends, he was under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim, that was reasonably sufficient to incite him into using deadly force. As the state points out, the appellant presented no witnesses in his defense. There is no evidence in the record indicating the appellant's state of mind. Further, there was no concrete evidence placed before the court as to the nature of the conversation between the defendant and the victim. The conjecture is that this conversation was regarding Ms. Thorpe. Later when Ms. Thorpe arrived, she physically assaulted the victim. Again, the conjecture is that the altercation between the men arose out of the actions of Ms. Thorpe. Since there were no witnesses who testified who could relate to the trial court the actual cause of the altercation, or the state of the appellant's mind either prior to or during the time, the appellant failed to meet his burden of persuasion. There is simply no evidence that the victim provoked the appellant to the point where an ordinary person would have been aroused to passion beyond the power of his or her control.
The appellant's assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J., and FRANK D. CELEBREZZE, JR., J., CONCUR.