[Cite as *State v. Robinson*, 2012-Ohio-5506.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97951**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CLIFTON ROBINSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-545664

**BEFORE:** Kilbane, J., Boyle, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** November 29, 2012

**ATTORNEY FOR APPELLANT**

Adam M. Van Ho
Burdon and Merlitti
137 South Main Street
Suite 201
Akron, Ohio 44308

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Kevin R. Filiatraut
Nicole Ellis
Assistant County Prosecutors
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Clifton Robinson, appeals from his convictions for murder, felonious assault, and aggravated assault. For the reasons set forth below, we affirm defendant's convictions, but we remand in order for the trial court to reimpose postrelease control.

{¶2} On December 29, 2010, defendant and his girlfriend, Lydia Nord ("Nord"), were indicted in connection with the murder of Kevin Ghee II ("Ghee") and the stabbing of Dorian Williams ("Dorian"). Defendant was charged with aggravated murder in violation of R.C. 2903.01(A) as to Ghee, murder in violation of R.C. 2903.02(B) as to Ghee, two counts of felonious assault in violation of R.C. 2903.11(A)(2) as to Ghee and Dorian, and one count of attempted murder in violation of R.C. 2903.02(A) and R.C. 2923.02 as to Dorian. Nord was charged with aggravated murder, murder, two counts of felonious assault, attempted murder, and two counts of obstruction of justice.

{¶3} On August 5, 2011, Nord entered into a plea agreement with the state of Ohio. She pled guilty to two charges of obstructing justice. On January 27, 2012, Nord was sentenced to one year of imprisonment and five years of community control sanctions.

{¶4} A jury trial for Robinson began on December 12, 2011. The testimony established that on October 17, 2010, Ghee and Dorian were out with several friends celebrating Ghee's 25th birthday at Earth Nightclub. The group remained at the club for approximately two hours. During this time, Ghee became intoxicated. Ghee had a brief altercation with a male patron who bumped into him, and Ghee's friend, Tionna Haugabrook ("Haugabrook"), had an altercation with a female patron. Ghee had a second argument with another male patron, and club security asked everyone in the club to leave. James Evans ("Evans"), another member of Ghee's group, walked Ghee to his car to prevent further conflict, but Ghee and Dorian began to fight with yet another patron in the front of the parking lot. Haugabrook joined this altercation.

{¶5} Evans attempted to direct Ghee away from the area, but Ghee pulled away from Evans and began to fight with the driver of a silver Cadillac in the rear of the parking lot. Again, Haugabrook joined this altercation. According to Evans, "[i]t was almost as if everyone * * * just started to go after each other." The parking lot was very crowded, and Ghee's friend, William Robinson ("William"), was stopped near the exit. William ran to Ghee and tried to walk him back to the car. The driver of a white Tahoe SUV, later identified as Nord, honked the horn. Defendant rolled down the passenger window, and he and Nord ordered everyone away from the Tahoe SUV. Ghee approached the passenger side of the vehicle, and words were exchanged between the defendant and Ghee. Ghee then reached into the Tahoe SUV and punched the defendant

two or three times. In response, defendant retrieved a knife from the car, opened it to expose the blade, and placed it on his thigh.

{¶6} Haugabrook attempted to defuse the situation and explained to defendant that Ghee had been drinking, but defendant repeatedly threatened to kill Ghee. Haugabrook yelled to her friends that defendant had a knife and pushed against the passenger door to try to stop defendant from exiting the vehicle, but she was unsuccessful. Haugabrook ran to Ghee and gave him a "bear hug" to push him away from defendant and toward William's car. They fell over, and Haugabrook felt someone over her.

{¶7} Danielle Colley ("Colley"), who was also with Ghee's party, testified that after Ghee had reached William's car, defendant got out of the Tahoe SUV, ran over to Ghee and Haugabrook, and swung at Ghee twice with a knife.

{¶8} James Evans testified that he heard Haugabrook scream. When he looked over, he saw Ghee lying face down on the ground near William's car, about 15 to 20 feet away from Nord's car. Evans observed defendant standing over Ghee with a knife. According to Evans, the blade was gray-silver, and 2-3 inches long. Evans kicked the defendant, and defendant returned to the Tahoe SUV and rolled up the windows.

{¶9} Ghee's companions noted the license plate of Nord's vehicle, FLEXIN3, and Colley called 911. William threw objects at the Tahoe SUV to stop it from leaving the scene, then he and Evans transported Ghee to MetroHealth Emergency Department where he later died.

**{¶10}** Evans also testified regarding events depicted on the security video. According to this testimony, a large white Tahoe SUV approached the exit to the parking lot where a large group of individuals had congregated. The driver appeared to wait for the group to disburse, and the group then surrounded the vehicle. The video next depicted Ghee at the passenger window of the white Tahoe SUV, and a short time later, the video showed Ghee's friends pulling him away and walking toward the exit of the parking lot near William's car. Haugabrook pushed against the passenger door of defendant's car to keep it from opening. Defendant then exited the passenger side of the Tahoe SUV, running toward the group near the exit.

**{¶11}** Dorian described events recorded on a security video of the Earth Nightclub and parking lot, and further testified that Evans took Ghee to William's car. After defendant yelled at Ghee for blocking the exit, Ghee ran to the white Tahoe SUV and began to yell at defendant. Haugabrook held defendant's door shut so that he could not pursue Ghee and pushed Ghee away from the defendant. Dorian next observed defendant running back toward the Tahoe SUV and noticed that Ghee was covered in blood. Dorian and another friend, Darcell Hollingshead, began grabbing and smashing objects against the Tahoe SUV to keep it from leaving the scene. They shattered one of the windows and attempted to pull the defendant out of the vehicle. Dorian next testified that he reached into the Tahoe SUV, and defendant cut him from the middle of his cheek to the middle of his lip. Dorian went to MetroHealth where he received 46 stitches to close his wound. He and Colley later identified defendant from a photo array.

{¶12} Nord testified in this matter as part of her plea agreement. She stated that defendant had been her boyfriend for three years and that they lived together. On October 17, 2010, she and defendant were celebrating Sweetest Day. She took ecstacy, and they smoked marijuana. Nord drove them to Sin Nightclub. Earlier in the evening, a male patron danced close to defendant and defendant gave Nord his knife so that he would not "do anything stupid." She put the knife in her purse. They then went to Earth Nightclub. They drank alcohol and smoked more marijuana. After about one hour, they left the club and returned to Nord's Tahoe SUV. Another vehicle blocked their path, and a group of rowdy patrons congregated in the lot. Defendant became agitated, and he yelled at the people standing in the lot. One of the men standing in the lot, identified as Ghee, began to argue with defendant who was seated inside the Tahoe SUV. Ghee then reached into the vehicle and punched defendant. Defendant then asked for Nord's purse. He grabbed it, placed it on the middle console, then took out the knife and placed it on his lap as a warning.

{¶13} Nord further testified that after Ghee punched defendant, Ghee ran off and a woman pushed against defendant's passenger door to keep him inside the vehicle. Nord instructed defendant to calm down, but he repeatedly threatened to kill Ghee. He opened the knife, exited the Tahoe SUV, and chased after Ghee's group. He then returned to the Tahoe SUV and instructed Nord to roll up the windows and lock the doors. The group then began striking Nord's vehicle. They smashed the front passenger window, and attempted to pull defendant from the Tahoe SUV. Nord said, "get his ass." Defendant

slashed one of the men in the face. Nord drove onto the sidewalk to flee the group. Later, the defendant threw the knife out of the car window over the innerbelt bridge. Nord further testified that she keeps a second knife in her car for protection, but this weapon was not used in the attack.

{¶14} Cleveland Police Detective James Raynard ("Raynard") testified that on October 17, 2010, he responded to the Earth Nightclub, located on the East bank of the Flats on Old River Road. He observed and photographed a large volume of blood near the exit of the parking lot, the driveway, and sidewalk. He also observed and photographed pieces of the mirror and the body of the Tahoe SUV, a portion of the outer cover of a cell phone, and other items.

{¶15} Police learned that the suspects fled in a vehicle owned by Nord, who was living in Oberlin. Lorain County Sheriff Sergeant Anthony Syrowski ("Syrowski") went to Nord's home. Syrowski observed that the passenger side mirror was broken, the front passenger side window was broken out, and there was blood on the exterior of the vehicle. At this time, Nord explained to Syrowski that as she and defendant were leaving a club, they honked the horn in order to get a vehicle to move out of the way. A man exited that vehicle and smashed her Tahoe SUV with a chair or barricade. Defendant told Syrowski that he observed five or six people fighting nearby, and after the officer inquired about a cut on defendant's hand, he explained that he had been cut from the broken glass when the window of the Tahoe SUV was smashed.

**{¶16}** Cleveland police responded to Nord's home and arrested defendant and Nord. Raynard obtained swabs of suspected blood from the vehicle and Nord's garage, and also confiscated shoes, socks, a shirt, and pants belonging to the defendant. A knife was also recovered from the vehicle later, after it was towed, but further analysis did not link it to the stabbings. After interviewing Nord, police searched for the knife under the innerbelt bridge, but they did not find it.

**{¶17}** In a recorded interview with Cleveland Police Detectives Kathleen Carlin and Henry Veverka, defendant stated that after Nord honked her horn to exit the parking lot, a man punched defendant and he "lost it" and came out of the car. The defendant stated that he simply wanted to scare his attacker. He observed that another man had something in his hand and that this individual may have been the one who stabbed Ghee and Dorian. Defendant acknowledged that he had a knife in his possession on the night of October 17, 2010, but he denied that he brandished it and denied stabbing Ghee and Dorian. Defendant had cuts on his hand but explained that they were from the broken window.

**{¶18}** Deputy Medical Examiner Andrea McCollom, M.D. ("Dr. McCollom"), testified that Ghee died from a stab wound to the anterior portion of his neck that punctured his trachea and cut his jugular vein. In addition, Ghee sustained a stab wound to the middle of his chest, the front of his left leg, and his right hand. Ghee also had blunt-impact injuries, abrasions, and contusions that occurred around the time of his death. Dr. McCollom could not determine whether these were defensive wounds.

Toxicology results indicated a low level of active metabolite marijuana and a blood alcohol level of .18 grams per deciliter.

{¶19} Trace evidence analysis of Ghee's clothing revealed two defects on his shirt that were consistent with those made from a sharp object. A stain on Nord's garage floor was presumptive for blood, but there was insufficient material for a DNA analysis. Defendant was the major contributor of a blood sample recovered from the passenger handle of the Tahoe SUV, but the minor contributor was not identified. Defendant's blood was detected on his own clothing. Ghee's blood was also detected on defendant's clothing and a rear hatch release for the Tahoe SUV.

{¶20} The trial court subsequently dismissed the charge of attempted murder, and the jury convicted defendant of murder as a lesser included offense of aggravated murder as alleged in Count 1, murder as alleged in Count 2, felonious assault of Ghee as alleged in Count 3, and one count of aggravated assault of Dorian, as a lesser included offense of felonious assault as alleged in Count 5. For purposes of sentencing, the trial court merged the convictions for murder with the conviction for felonious assault, and sentenced defendant to a term of 15 years to life on these charges, together with a consecutive one-year term for aggravated assault, and ordered to pay $1,300 in restitution to Dorian.

{¶21} Defendant now appeals, assigning four errors for our review.

{¶22} Defendant's first assignment of error states:

Appellant's convictions are unconstitutional as they are against the manifest weight of the evidence and based on insufficient evidence, in violation of

the fifth and fourteenth amendments to the United States Constitution, Article I, Sections 10 and Sixteen of the Ohio Constitution, and Section 2921.12(A)(1) of the Ohio Revised Code.

**{¶23}** In this assignment of error, defendant challenges his conviction for aggravated assault, and challenges the evidence that a deadly weapon or dangerous ordnance was used in this matter because Dorian admitted that he never saw "the actual blade" and that breaking glass may have caused defendant's injuries.

**{¶24}** On review for sufficiency of the evidence supporting a conviction, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶25}** Aggravated assault is defined in R.C. 2903.12(A)(1) as follows:

No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * [c]ause serious physical harm to another * * *.

**{¶26}** Aggravated assault occurs only when a person, under extreme emotional stress, brought on by serious provocation, is incited to use deadly force and knowingly causes physical harm to another. *State v. Mabry*, 5 Ohio App.3d 13, 20, 449 N.E.2d 16 (8th Dist.1982).

**{¶27}** Following our review of the entire record, we note that Nord testified that defendant had a knife on October 17, 2010. Nord and Haugabrook both testified that after Ghee punched defendant, defendant opened the knife to expose the blade and placed it on his thigh, and that he threatened to kill Ghee. Colley testified that she observed defendant slash Ghee twice, and Evans observed defendant with a knife immediately after Ghee was attacked. Dorian indicated that he then confronted defendant in the Tahoe SUV and that defendant cut him. Forty-six stitches were required to close this wound. From all of the foregoing, we conclude there was sufficient evidence from which any rational trier of fact could have concluded beyond a reasonable doubt that defendant used a knife during both the attack on Ghee and the attack on Dorian. Accord *State v. Paythress*, 8th Dist. No. 91554, 2009-Ohio-2717, ¶ 8 (sufficient evidence established that defendant had a knife, though no weapon was recovered from the scene and a broken mirror was nearby, where roommate observed the defendant with a box cutter and X-Acto knife, defendant threatened to cut roommate, and evidence established that cut was consistent with cuts caused by a blade).

**{¶28}** This portion of the assigned error is therefore without merit.

**{¶29}** In reviewing a challenge to the manifest weight of the evidence supporting a conviction, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin*, 20 Ohio App.3d

172, 175, 485 N.E.2d 717 (1st Dist.1983). The appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Thompkins*, 78 Ohio St.3d at 386, 1997-Ohio-52, 678 N.E.2d 541.

**{¶30}** Applying the foregoing to this matter, we conclude, after weighing the evidence and all reasonable inferences, that the convictions are not against the manifest weight of the evidence. The State's evidence indicated that defendant had a knife on October 17, 2010. After Ghee punched defendant, defendant opened the knife and repeatedly threatened to kill Ghee. Defendant left the front passenger seat of the Tahoe SUV and chased after Ghee. Colley testified that she observed defendant slash Ghee twice, and Evans observed defendant with a knife immediately after Ghee was attacked. Dorian sustained a penetrating wound to the face that required forty-six stitches to close, and Ghee died from a stab wound to the anterior portion of his neck that punctured his trachea and cut his jugular vein. In light of the foregoing, we conclude that the jury did not lose its way in convicting defendant of the offenses.

**{¶31}** The first assignment of error is without merit and overruled.

**{¶32}** Defendant's second assignment of error states:

The trial court erred and committed reversible error when it admitted character evidence, evidence of other acts, and irrelevant evidence against Appellant.

**{¶33}** In this assignment of error, defendant complains that the trial court erred in permitting the State to introduce testimony that Ghee was "a great person," "[an amazing]

dad, family oriented," "fun, always happy, nice to be around." Defendant failed to object to this testimony during trial. As such, he has waived all challenges except plain error.

{¶34} Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, the error must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings. *State v. Tichon*, 102 Ohio App.3d 758, 767, 658 N.E.2d 16 (9th Dist.1995).

{¶35} We review a trial court's decision regarding the admission of such evidence under an abuse of discretion standard. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.

{¶36} Pursuant to Evid.R. 403(A), the court is required to weigh the probative value of the evidence against the danger of unfair prejudice, confusion of the issue, or misleading the jury.

{¶37} Evidence about the victim is generally inadmissible at trial unless it relates directly to the circumstances of the crime and is not offered to elicit sympathy from the jury. *State v. Allen*, 73 Ohio St.3d 626, 633, 1995-Ohio-283, 653 N.E.2d 675.

{¶38} In accordance with Evid.R. 404(A),

[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions:

* * *

(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the

same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible * * *.

{¶39} We find no abuse of discretion and no plain error in this matter. The testimony that Ghee was "a great person," "[an amazing] dad, family oriented," "fun, always happy, nice to be around" did not arise to the level of impermissible evidence pursuant to Evid.R. 404(A) because it did not go to the issue of whether Ghee was a peaceful or nonviolent person. Rather, this testimony was in the nature of "background evidence" permitted in *State v. Brodbeck*, 10th Dist. No. 08AP-134, 2008-Ohio-6961, ¶ 71. The court stated;

[P]roving the facts of a murder necessarily involves disclosure of details as to the victims and their lives. "The victims cannot be separated from the crime." *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, at P230, 858 N.E.2d 1144 * * *. Moreover, background information about a murder victim is admissible to identify the victim as a living person.

{¶40} This assignment of error is without merit and overruled.

{¶41} Defendant's third assignment of error states:

Appellant was denied effective assistance of counsel in violation of *Strickland v. Washington*, the sixth and fourteenth amendments to the United States Constitution, Article I, Sections 10 of the Ohio Constitution.

{¶42} In order to successfully assert ineffective assistance of counsel under the Sixth Amendment, a defendant must show not only that the attorney made errors so serious that he was not functioning as "counsel," as guaranteed by the Sixth Amendment,

but also that the deficient performance was so serious as to deprive defendant of a fair and reliable trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶43}** Because we have separately addressed the underlying assignments of error and found them to be without merit, defendant's claim of ineffective assistance based upon these same grounds must likewise fail. *See State v. Henderson*, 39 Ohio St.3d 24, 33, 528 N.E.2d 1237 (1988). In addition, because the individual assignments of error are without merit, we will not recognize cumulative error. *State v. Viceroy*, 8th Dist. No. 97031, 2012-Ohio-2494, ¶ 22.

**{¶44}** This assignment of error is without merit and overruled.

**{¶45}** Defendant's fourth assignment of error states:

The trial court failed to properly advise Appellant of postrelease control.

**{¶46}** The state of Ohio concedes that the sentencing journal entry did not mention postrelease control. Consequently, we must remand this matter for a nunc pro tunc entry to reflect the proper imposition of postrelease control. *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, syllabus.

**{¶47}** Convictions affirmed, but we remand this matter to the trial court for correction of the journal entry.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR