OPINION
Defendant, Duane Weaver, appeals from his conviction and sentence for felonious assault.
On October 15, 1998, Defendant was indicted on one count of felonious assault, in violation of R.C. 2923.11(A)(2). Defendant was also indicted on various misdemeanor charges, including assault, criminal damaging, possession of drug paraphanalia and aggravated menacing.
Prior to the commencement of a jury trial on November 16, 1998, the trial court dismissed the criminal damaging charge at the State's request. At the conclusion of the trial, the jury found Defendant guilty of all charges. The trial court subsequently sentenced Defendant to an eight year term of imprisonment.
Defendant has timely filed a notice of appeal to this court. In this appeal Defendant challenges only his conviction for felonious assault.
Th evidence presented at trial by the State demonstrates that on September 24, 1998, Ruth Logan Weaver, estranged wife of Defendant, Duane Weaver, and Michelle Taylor, Defendant's cousin, went to the Little Nashville Bar in Urbana. Defendant entered the bar and saw Ruth Weaver dancing with another man, Stacey Mays. Defendant became angry and assaulted some of the bar's patrons. Defendant then went outside and damaged Ruth Weaver's vehicle. Defendant fled when police were called to the scene.
Police questioned a number of witnesses and then escorted Ruth Weaver and Michelle Taylor to the police station, where they were questioned. Subsequently, the two women returned home. When they arrived, but before they got out of their car, Michelle Taylor saw Defendant approach the vehicle from behind, holding a metal bar.
Defendant went around to the driver's side of the vehicle where Ruth Weaver was sitting and swung the metal bar at her, breaking the driver's side window. Ruth Weaver raised her left arm in a defensive posture and ducked, but the metal came through the shattered glass, striking Ruth Weaver on the left shoulder and left elbow. As a result, Ruth Weaver suffered bruising and swelling in her left shoulder and a laceration of her left elbow that required emergency medical treatment.
Defendant, Duane Weaver, filed a timely notice of appeal from his conviction. He presents four assignments of error.
 FIRST ASSIGNMENT OF ERROR IT WAS PLAIN ERROR FOR THE TRIAL COURT TO DENY DEFENDANT-APPELLANT'S REQUEST FOR CONTINUANCE AT THE START OF THE TRIAL.
On the morning that Defendant's jury trial commenced, November 16, 1998, Defendant's appointed counsel inquired of the trial court whether it had received a letter Defendant had mailed to the court a few days before on November 11, 1998, requesting a change of counsel. The trial court indicated that it had not yet received that letter. Defendant then orally represented to the trial court that he was unhappy with his appointed counsel's representation, although he offered no specific reasons for why that was so. Defendant told the trial court that in his letter he had requested either the appointment of a different attorney on the trial court's permission for Defendant to represent himself. The trial court denied Defendant's request for the appointment of a different attorney, noting that this current defense counsel was well qualified and that Defendant's request should have been made earlier, in a more timely manner.
The trial court informed Defendant that he had the right to represent himself if that was his desire, but the court cautioned that such a decision would be unwise. Defendant stated that he nevertheless intended to represent himself, and he requested a continuance of the trial in order to prepare, claiming that he knew very little about the State's evidence. The trial court denied Defendant's request for a continuance, observing that Defendant's appointed counsel would remain in the courtroom during the trial to assist Defendant as needed, and was prepared for trial and could be consulted by Defendant at any time.
The decision whether to grant or deny a continuance of the trial is a matter entrusted to the trial court's sound discretion, which will not be reversed on appeal absent an abuse of discretion. State v. Unger (1981), 67 Ohio St.2d 65. An abuse of discretion connotes more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams (1980),62 Ohio St.2d 151.
There are no mechanical tests for determining when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge. Unger,supra. In evaluating a request for a continuance the court should consider the length of the requested delay, whether other continuances have been requested and received, the inconvenience to litigants, witnesses, counsel and the court, whether the requested delay is for legitimate reasons, or whether it is dilatory or contrived, whether defendant contributed to the circumstances giving rise to the request for a continuance, and other relevant factors depending on the unique facts of each case.Id.
Defendant argues that the trial court abused its discretion by not granting him a continuance. We disagree.
Despite the fact Defendant had been represented by this appointed counsel since his arraignment on these charges on October 23, 1998, Defendant's dissatisfaction with this counsel and his desire for newly appointed counsel was not communicated to the trial court until the first day of trial when the litigants, counsel, witnesses, and prospective jurors were all present and ready to proceed. Even Defendant's letter requesting a change of counsel was not posted until three business days before the start of his trial. Moreover, Defendant offered no explanation for why he believed defense counsel's representation was deficient, and Defendant requested a continuance of the trial only after the trial court had denied his request for a change of counsel and Defendant elected to represent himself. Under these particular facts and circumstances, the trial court did not abuse its discretion in denying Defendant's request for a continuance of the trial.
 The first assignment of error is overruled. SECOND ASSIGNMENT OF ERROR THE ADMISSION OF PRIOR BAD ACTS TESTIMONY AND TESTIMONY OF THE DEFENDANT-APPELLANT'S PROPENSITY TOWARD VIOLENCE BY THE TRIAL COURT WAS PREJUDICIAL AND PLAIN ERROR.
Defendant was charged with committing felonious assault upon his wife, Ruth Logan Weaver. The first incident which involved a reference to other crimes or acts of wrongdoing by this Defendant took place during the State's direct examination of Ruth Weaver:
 Q. Okay. Now, is this the first time that you and Mr. Weaver have had — this year, 1998, had difficulty in which the police responded?
A. Uhm, yeah.
 Well, no. When I first came back up here from Florida, we had a little problem.
 Q. Okay. Was there an incident on June 30th of this year?
A. Yes.
Q. Tell us about that.
 A. Uhm, he had gone to my mother and asked her if he could stay in the trailer park in my trailer and he would be good. He wouldn't cause any problems. He'd help her out, all this. So she said okay, bu the first time anything came up, you know, he'd have to go.
 And so we had gone to some friends that evening and we were drinking a little bit of beer and he come up with the idea that he wanted to go get some drugs and — uhm, so that's what he did.
 So when they came back, which is quite a while later, about midnight, that was probably about 8:30 or not — I asked him please not to come back out there, that I knew he had been doing crack, and my daughter has a new baby there, and so we went out in the car and we rode around the block and I was talking to him about it, not to come out there, and he said okay, he wouldn't. He promised he wouldn't come out there. But he did anyway.
 About 3:30 in the morning there he was, banging on the door, wanting inside. He kicked the door in if he couldn't — if I didn't let him in. And in the meantime my daughter had called the police and the police were called and they came.
(T. 212-213.)
There was no objection by Defendant to this testimony by Ruth Weaver.
The second incident took place during the cross-examination of Ruth Weaver. Defendant asked the questions, as he had elected to represent himself:
 Q. Your daughter's baby. How many — how many different individual times do you feel that we've been in this court and many other courts and involved with the policing agencies and this, that and the other as far as you and I not getting along, and how many times have we been divorced and remarried?
A. Well, how many questions was that?
 Q. Two different questions. How many times have we been remarried and how many times have we been in front of the courts for problems that you and I have had as far as our —
 A. Well, when you got sent off for snatching that lady's purse, that didn't have anything to do with me. I didn't have anything to do with that, did I. I wasn't in court when you get sent off for that.
Q. Did you testify?
A. Yeah. I testified. Yeah.
But I didn't have anything to do with what you did.
Q. That's one incident. How many other incidents?
 A. You always seem to get yourself in these predicaments. I don't put you in the situations.
 Q. Well, now, as a result, what happens of these situation?
 A. Well, you shouldn't be around me. You should stay away from me. Leave me alone.
Q. Please answer the question. As a result —
A. I don't really know.
Q. What happens?
A. You get in trouble.
Q. And we do what?
A. All the time.
 Q. And we end up doing what? Being back together again?
A. Well, that's not going to happen this time.
Q. Well, how many times has it happened?
A. Believe me. You go to prison —
 The Court: Excuse me, just a minute. You, Mr. Weaver, have the responsibility not to be talking when the witness is talking. She's got to finish the answer before you ask your question.
Now start with a question.
MR. WEAVER:
Q. Has this happened more than once?
 A. You go to prison for like a year, then you're out. You go back to prison for a year, you're out. Go back to prison for a year, you're out. And the last time you went for about three and half years, and then you're out again.
 Q. Okay. Could you please answer the question? How many times have you been back with me them, in light of me?
 A. Well, you always write and tell me how wonderful you're going to be, and you're such a godly person, you're into church and all the wonderful things you're going to do, but you never do them.
 Q. You still haven't answered the question. How many times?
 A. Probably four or 5, but that don't — I didn't put in jail. You did.
(T. 224-227).
There was no objection by Defendant to this testimony by Ruth Weaver.
The third incident involving a reference to Defendant's bad character and his other acts of wrongdoing occurred during the State's direct examination of Urbana police officer Steve Molton:
 Q. When you went down to the disturbance at South Main, you indicated you had a double unit. What does that mean?
 A. That means we took one car because both of us went. We were aware of prior history with Mr. Weaver.
Defendant: Objection.
The Court: Overruled.
 A. And the fact the subject does resist and fight with officers.
 I went as a double unit with Officer Hughes for our protection.
(T. 265).
The fourth and final incident took place during the State's direct examination of Urbana police officer Mike Hughes:
 Q. So you got to the police station, talked to Ruth Logan. Did you remain there then?
 A. Uhm, after speaking with them, they started to leave. The dispatcher then advised me that there was a report, I believe, from Gary Weaver, who is Mr. Weaver's brother, that Duane Weaver was down in the area of South Main and Ward Lane and that he was threatening Gary Weaver.
Q. Duane Weaver was threatening Gary Weaver?
 A. That`s correct. Uhm, Officer Molton and myself responded in the same car.
Q. Why did you do that?
 A. Uhm, the witnesses at the Little Nashville Bar advised that they believed that Mr. Weaver was under the influence of crack cocaine. I'm familiar with Mr. Weaver. He has a past of resisting arrest and assaulting police officers.
(T. 302).
There was no objection by Defendant to this testimony by Officer Hughes.
In State v. Myers (February 12, 1999), Greene App. No. 98CA38, we observed:
 An accused cannot be convicted of one crime by proving that he or she has committed other crimes, or is a bad person. State v. Jamison (1990), 49 Ohio St.3d 182. Thus, pursuant to Evid.R. 404(B) and R.C. 2945.59, evidence of other crimes or acts of wrongdoing by a defendant wholly independent of the crime with which he is charged is not admissible to prove the defendant's bad character in order to show that defendant acted in conformity with that bad character on another particular occasion. State v. Lowe (1994), 69 Ohio St.3d 527; State v. Curry (1975) 43 Ohio St.2d 66.
Opinion at 10.
Evid.R. 404(B) and R.C. 2945.59 provide limited exceptions to the rule barring evidence of other acts, when other crimes or acts of wrongdoing by a defendant are offered to prove certain motive, opportunity, intent, preparation, scheme, plan or system, knowledge, identity, or the absence of mistake or accident. These exceptions to the general rule must be strictly construed. Statev. Goines (1996), 111 Ohio App.3d 840.
On three of the four occasions during trial when some reference was made to Defendant's other crimes or acts of wrongdoing, Defendant failed to object. That failure waived any error involved. State v. Wickline (1990), 50 Ohio St.3d 114. In that event, we review Defendant's claim of error under a "plain error" standard. Id. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been different. Id; State v. Long (1978), 53 Ohio St.2d 91.
The properly admitted evidence of Defendant's guilt is overwhelming, consisting of not only the testimony of the victim and an eyewitness to this crime but also Defendant's own admission at the crime scene, which was overheard by police and emergency medical personnel. On the state of this evidence, we cannot say that but for the admission of these statements concerning other acts of wrongdoing by Defendant the outcome of this trial clearly would have been different. Plain error has not been demonstrated.
With respect to the one instance during Officer Molton's testimony when Defendant timely objected to Molton's testimony concerning Defendant's history of resisting arrest and fighting with police, the trial court properly overruled Defendant's objection. This testimony was not offered for the improper purpose of proving Defendant's bad character in order to show that Defendant acted in conformity with that bad character on this occasion. Rather, this testimony was offered to explain why Officers Molton and Hughes, who were otherwise separately performing routine patrol duties that night, decided to pair up togther as a single one car unit when they went to the victim's home to apprehend Defendant.
Even assuming arguendo, however, that the trial court erred in admitting Officer Molton's statement, that error is harmless beyond a reasonable doubt, and not grounds for reversal, because the other properly admitted evidence of Defendant's guilt is overwhelming. Thus, there is no reasonable possibility that the error contributed materially to Defendant's conviction. State v.Myers, supra; Crim.R. 52(A).
 The second assignment of error is overruled. THIRD ASSIGNMENT OF ERROR THE COURT COMMITTED PLAIN ERROR IN FAILING TO GIVE JURY INSTRUCTIONS OF THE INFERIOR OFFENSE OF AGGRAVATED ASSAULT AND THE LESSER INCLUDED OFFENSE OF ASSAULT.
The trial court's original proposed jury instructions included an instruction on aggravated assault, R.C. 2903.12(A)(2), as an offense of inferior degree to the indicted offense of felonious assault, R.C. 2903.11(A)(2). The State objected to the proposed instruction on aggravated assault. The trial court subsequently refused to instruct the jury on aggravated assault, finding the evidence insufficient to prove the mitigating element of provocation. Defendant argues that the trial court erred in refusing to instruct the jury on the offense of aggravated assault.
Defendant was charged with felonious assault in violation of R.C. 2903.11(A)(2):
2903.11 Felonious Assault
(A) No person shall knowingly:
* * *
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
Aggravated assault is defined in R.C. 2903.12(A)
2903.12 Aggravated assault
 (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
* * *
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
In State v. Deem (1988), 40 Ohio St.3d 205, the Ohio Supreme Court held:
 1. Pursuant to R.C. 2945.74 and Crim.R. 31(C), a jury may consider three groups of lesser offenses on which, when supported by the evidence at trial, it must be charged and on which it may reach a verdict: (1) attempts to commit the crime charged, if such an attempt is an offense at law; (2) inferior degrees of the indicted offense; or (3) lesser included offenses.
 2. An offense is an "inferior degree" of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements. (R.C. 2945.74 and Crim.R. 31[C], construed.)
* * *
 4. Aggravated assault, R.C. 2903.12, contains elements which are identical to the elements defining felonious assault, R.C. 2903.11, except for the additional mitigating element of serious provocation. Thus, in a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury. (R.C. 2945.74 and Crim.R. 31[C], construed and applied.)
 5. Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time. (State v. Mabry [1982], 5 Ohio App.3d 13, 5 OBR 14, 449 N.E.2d 16, paragraph five of the syllabus, approved.)
Syllabus.
In order for provocation to be reasonably sufficient to incite the defendant into using deadly force, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. State v. Shane (1992), 63 Ohio St.3d 630. Where a sufficient period of time has elapsed to allow the defendant to cool down between the alleged provocation and the subsequent assault, the provocation will not be deemed to be reasonably sufficient. State v. Huertas (1990), 51 Ohio St.3d 22.
According to Defendant's trial testimony, he became provoked and angry when he saw his wife, Ruth Weaver, in the Little Nashville Bar hugging and kissing another man, Stacey Mays. Whether or not what Defendant claims he saw would reasonably provoke Defendant to use deadly force is debatable, but one which we need not decide in this appeal. Defendant did not assault Ruth Weaver at the Little Nashville Bar, where the alleged provocations took place. Rather, he assaulted her some time later, when she returned home. We agree with the trial court that, on these facts, there was more than sufficient time between the alleged provocation at the Little Nashville Bar and the subsequent assault on Ruth Weaver for Defendant to cool down. The evidence or provocation here was insufficient, as a matter of law, to justify a jury instruction on the offense of aggravated assault.
Defendant also requested a jury instruction on the lesser included offense of Assault. The trial court also refused to give that requested instruction.
Assault is defined in R.C. 2903.13(A), which states:
 No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.
Assault is a lesser included offense of Felonious Assault. However, that does not automatically require the instruction requested. In State v. Thomas (1988), 40 Ohio St.3d 213, the Ohio Supreme Court observed:
 Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. (State v. Kidder
[1987], 32 Ohio St.3d 279, 513 N.E.2d 311; State v. Davis [1983], 6 Ohio St.3d 91, 6 OBR 131, 451 N.E.2d 772; State v. Wilkins [1980], 64 Ohio St.2d 382, 18 O.O. 3d 528, 415 N.E.2d 303, clarified.)
Paragraph two of the syllabus.
A close examination of the evidence in this case compels the conclusion that the jury could not have reasonably acquitted Defendant of felonious assault yet found him guilty of assault. Defendant assaulted Ruth Weaver via the use of the metal bar, which he wielded to smash the driver's side window of her car while she was sitting inside, behind the steering wheel. In his own testimony at trial, Defendant acknowledged that he broke the window of Ruth Weaver's car with the metal bar. However, he claims that his intent was only to damage the vehicle, and not to cause any physical injury to Ruth Weaver. According to Defendant, Ruth Weaver's injuries were accidental, happening when the metal bar unexpectedly went through the window.
Under no reasonable view of this evidence could the jury have found that Defendant knowingly cause Ruth Weaver physical harm without also finding that he used a deadly weapon, the metal bar, to do so. Therefore, the evidence did not warrant a charge of assault, and the trial court did not err in refusing to give such an instruction.
The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 THE STATE FAILED TO PROVE THAT THE INSTRUMENT ALLEGED TO HAVE CAUSED HARM TO THE VICTIM WAS A DEADLY WEAPON OR DANGEROUS ORDNANCE AS DEFINED IN SECTION 2923.11 OF THE REVISED CODE.
Defendant argues that the evidence presented at trial was insufficient to prove one of the essential elements of felonious assault, that he knowingly caused Ruth Weaver physical harm by means of a "deadly weapon."
 "Deadly weapon" means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.
R.C. 2923.11(A).
Dr. Walter Dixon, the emergency room physician who treated Ruth Weaver, testified that the metal bar defendant used was of sufficient size and weight to be capable of inflicting death. Moreover, it is clear from the testimony of Ruth Weaver and Shelby Taylor that Defendant used the metal bar as a weapon, smashing the driver's side window where Ruth Weaver was sitting. Construing this evidence regarding the nature of the weapon and the manner in which it was used by Defendant in a light most favorable to the State, a rational trier of fact could find that all of the essential elements of felonious assault, including the use of a "deadly weapon," were proved beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259. Defendant's conviction is supported by legally sufficient evidence.
The fourth assignment of error is overruled. The judgment of the trial will be affirmed.
WOLFF, J. and YOUNG, J., concur.
Copies mailed to:
Jack W. Whitesell, Jr. Esq.
Cathy J. Weithman, Esq.
Hon. Roger B. Wilson