OPINION
This matter presents a timely appeal from a judgment rendered by the Jefferson County Common Pleas Court, finding defendant-appellant, Jenabu Christian, aka Jay Christian, guilty of aggravated burglary, in violation of R.C. 2911.11, and guilty of aiding and abetting aggravated murder, in violation of R.C. 2903.01(B) and 2923.03(A), along with his subsequent sentencing thereon.
On January 30, 1996, appellant was in an apartment with Michael White (White) when White received a telephone call indicating that his sister, Tiffany White (Tiffany), had her arm broken by Eulis "Punchy" Curenton (Eulis). (Tr. 112). White became increasingly angered and allegedly took possession of a gun and concealed it on his person. (Tr. 119). Appellant and White secured a car from Lisa Phillips (Phillips), and together with Shannon White (Shannon) proceeded to Tiffany's home, with appellant driving. (Tr. 119, 207)
Appellant, White and Shannon were joined by another vehicle carrying Roddell Fuqua (Fuqua), Roland Cook (Cook), Sante Cook (Sante) and Shauntain White (Shauntain), and both vehicles proceeded to follow the ambulance which was transporting Tiffany to the hospital. (Tr. 193). Appellant drove the first vehicle and during the course of the journey, appellant stopped following the ambulance to the hospital and drove the vehicle to the home of Andre "Tree" Curenton (the decedent), who was the brother of Eulis. (Tr. 190-191). The other vehicle followed appellant to this new destination. (Tr. 191)
Upon arriving at the decedent's home, the group, including appellant, broke down the door and entered the premises. (Tr. 210). An argument ensued and White allegedly shot the decedent three times, killing him. (Tr. 211). After the shooting, appellant drove away from the crime scene with White and Shannon. (Tr. 211). Appellant then fled from Jefferson County with White and both were eventually arrested in Florida. (Tr. 376-377)
Appellant was subsequently charged with aggravated burglary and aiding and abetting aggravated murder. Both charges included attendant gun specifications. During the trial, plaintiff-appellee, State of Ohio, called all of the parties who were present the night in question as witnesses, except for White and appellant. Defense counsel made many inappropriate comments during his cross-examination of appellee's witnesses. After appellee rested, appellant's counsel began to give his opening statement and then abruptly rested his case, stating that appellee did not prove all of the necessary elements of its case. (Tr. 393-394). Following deliberation, the jury returned a verdict finding appellant guilty of both aggravated burglary and aiding and abetting aggravated murder. The jury found appellant not guilty of the attendant firearm specifications. Appellant was sentenced to an indefinite incarceration term of not less than five nor more than twenty-five years for aggravated burglary, and an indefinite incarceration term of not less than twenty years nor more than life for aiding and abetting aggravated murder. These sentences were to be served concurrently. This appeal followed.
Appellant sets forth six assignments of error on appeal.
Appellant's first assignment of error alleges:
 "The defendant's constitution (sic) right to testify and/or present witnesses in his own behalf was denied when his trial counsel rested for the defense and defendant's consent was not placed on record by either his trial counsel and/or the trial court."
Appellant argues that when a defendant wants to waive a constitutional right, such waiver must be clearly established.McMann v. Richardson (1970), 397 U.S. 759. Appellant further argues that the right to compulsory attendance was established by the United States Supreme Court in Washington v. Texas (1967),388 U.S. 14. Furthermore, in State v. Pennycooke (C.A.3, 1995),65 F.3d 9, the court held that the trial court had a duty to advise a defendant of his right to testify on his own behalf, if the trial court believed that defense counsel was frustrating a desire to testify. Appellant contends that these cases illustrate the significance of a constitutional waiver.
Appellant argues that he was prevented from testifying in the present case which violated his constitutional right to compulsory attendance. Appellant asserts that his waiver of this right was not clear in the record. Furthermore, appellant maintains that the trial court should have had a duty to advise appellant of his right to testify on his own behalf. In failing to so advise, appellant alleges that the trial court committed reversible error.
Appellant's reliance on his right to compulsory attendance of witnesses is misplaced in the present case. In Washington, supra,
the United States Supreme Court held that a defendant cannot be prevented from putting on a defense, if such a defense is desired. Furthermore, compulsory attendance of witnesses underWashington, supra, also means that witnesses called by a defendant must appear when required to do so by subpoena.
Appellant's reliance on Pennycooke, supra, is also misplaced. In Pennycooke, supra, the court held that a trial court must advise a defendant of his right to testify if it appears that defense counsel is overcoming defendant's desire to testify. There is nothing in the record indicating appellant's desire to testify in his own behalf.
Furthermore, this case is similar to State v. Morrison. (Oct. 7, 1993), Franklin App. No. 91 AP-1326, unreported, in which the court held that the trial court did not have a duty to advise a defendant of his right to testify. The court in Morrison, supra,
found that the defense counsel made a tactical decision to dissuade the defendant from testifying, as the defendant would otherwise have opened the door for the prosecutor to present evidence of prior offenses. The same tactical decision was present in this case. The issue of whether appellant would testify as to his good character arose during pretrial motions and continued during the trial when the prosecutor stated:
 "MR. BECKER: The only thing I'd bring up to the Court at this time is, Your Honor, if the Defendant is going to be called, I want to make sure that if — if his character for — if his good character is put in issue or his character for violence or nonviolence is brought into issue, I want it to be understood, and I think the Court's already ruled, but we can introduce his conviction from juvenile court, which certainly tends to dissipate his good character and also the offenses, sexual battery and under the Revised Code that's an offense of violence. So, if he says he's not a violent person or if he says he's a good person, I think pursuant to State versus Marinski, we're entitled to cross-examine him on that conviction. I just want to make sure that's understood for the record." (Tr. 391-392).
Given that defense counsel did not overcome appellant's desire to testify, but instead used a defense tactic motivated by a desire to discourage prior acts from being introduced to the jury, the trial court did not have a duty to obtain a recorded waiver of appellant's right to testify.
Appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "The trial court erred in not instructing the jury on lesser included offenses and/or inferior degrees of the crimes charged as required by law based on the evidence presented."
Appellant states that a trial court must instruct the jury on a lesser-included offense if the jury could determine that the greater offense has not been proven beyond a reasonable doubt, but the facts support the elements of a lesser-included offense.State v. Mabry (1982), 5 Ohio App.3d 13. Appellant further cites the two step process put forth in State v. Kidder (1987), 32 Ohio St.3d 279,281, wherein the Ohio Supreme Court stated:
 "`* * * [I]f all the elements of a separate offense are present with others in an offense charged in an indictment, such separate offense is a lesser included offense; or, where all the elements of an offense are included among the elements of a charged offense, the former is a lesser included offense. But to warrant a conviction of such lesser included offense, another limitation must be taken into consideration. A court may not charge upon, and a defendant may not be found guilty of, a lesser offense, unless the evidence tends to support each of the necessary elements of such offense.'"
Furthermore, a trial court may only instruct the jury on a lesser-included offense if such offense is a crime of a lesser degree than the charged offense. Kidder, supra. Appellant further states that a trial court commits reversible error when it refuses to instruct on a lesser-included offense which is supported by the facts. State v. Loudermill (1965), 2 Ohio St.2d 79.
Involuntary manslaughter is a lesser-included offense of aggravated murder, as is voluntary manslaughter. State v.Williams (1996), 74 Ohio St.3d 569; State v. Benge (1996),75 Ohio St.3d 136. Further, murder is a lesser-included offense of aggravated murder. State v. Tyler (1990), 50 Ohio St.3d 24.
Appellant argues that in this case, it was possible the prosecutor did not prove every element of aiding and abetting aggravated murder. Appellant additionally argues that the facts supported a finding of the lesser-included offenses of involuntary manslaughter, voluntary manslaughter or murder. Appellant argues that the trial court did not instruct the jury on any of these lesser-included offenses and thereby, committed reversible error. Loudermill, supra.
A trial court may choose to instruct on a lesser-included offense only when requested by an attorney. In the present case, defense counsel did not request any lesser-included offense instructions. The failure to object to a jury instruction constitutes a waiver of any claim of error thereto. State v. Long
(1978), 53 Ohio St.2d 91. Therefore, reversal of the trial court's decision may only occur if it appears that the trial court's failure to instruct on the lesser-included offenses constituted plain error under Crim.R. 52(B). An error does not constitute plain error unless the outcome of the trial would clearly have been different, but for the error. State v. Cooey
(1989), 46 Ohio St.3d 20. Plain error should be applied with caution and only in exceptional circumstances. Long, supra.
There was sufficient evidence in this case to find appellant guilty of aiding and abetting aggravated murder. Furthermore, defense counsel stated during his opening that appellee did not prove every element of the crime. Therefore, defense counsel presumably did not request any lesser-included offense instructions based on this belief, so that appellant could obtain a full acquittal as opposed to a conviction on one of the lesser-included offenses. Therefore, the trial court did not commit any error, upon which to base a claim of plain error, in not instructing the jury on lesser-included offenses.
Appellant's second assignment of error is found to be without merit.
Appellant's third assignment of error alleges:
 "The trial court erred in failing to instruct the jury as required by law under O.R.C. 2923.03(D) when alleged accomplices of the defendant-appellant testified against him."
Appellant states that he requested an instruction be given to the jury regarding accomplice testimony in accordance with R.C.2923.03(D). Appellant requested such instruction because there were many accomplices to the crime who testified against him. R.C. 2923.03(D) states:
 "If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 "`The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 "It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.'"
Appellant asserts that the trial court did not comply with the instruction set forth in R.C. 2923.03(D).
R.C. 2923.03(D) expressly permits substantial compliance with the accomplice testimony instruction. Therefore, a trial court does not commit error if it does not literally comply with the statute.
The trial judge substantially complied with R.C. 2923.03(D), when it instructed:
 "You have heard testimony from other persons who pleaded guilty to the crime of the same circumstances in this case and of others. These persons are said to be accomplices. An accomplice is one who assists another in the commission of a crime. Whether these four persons separately considered were accomplices and the weight to give to each of their testimony are matters for you to determine.
 "Now, testimony of a person who you find to be an accomplice should be viewed with grave suspicion and weighed with great caution. (Tr. 438-439).
Since the trial judge substantially complied with R.C.2923.03(D), it did not err when it instructed the jury about accomplice testimony.
Appellant's third assignment of error is found to be without merit.
Appellant's fourth assignment of error alleges:
 "The defendant-appellant was deprived of effective assistance of counsel, a fair trial, and due process by the conduct of his counsel at trial, and the numerous prejudicial errors committed by him."
The United States Supreme Court provided a standard for determining ineffective assistance of counsel in Strickland v.Washington (1984), 466 U.S. 668. In order to demonstrate ineffective assistance of counsel, appellant must first show that his defense counsel was deficient. Strickland, supra. This requires that appellant show that his defense counsel's performance fell below an objective standard of reasonableness.Strickland, supra. The second part of the Strickland test requires that appellant prove that he was prejudiced by defense counsel's deficiency. To demonstrate prejudice, an appellant must "show that there is a reasonable probability that, but for [defense] counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, supra. The Ohio Supreme court adopted the Strickland test in State v.Bradley (1989), 42 Ohio St.3d 136.
In the present case, there were many instances of unreasonable and unprofessional conduct by defense counsel. Such inappropriate actions of defense counsel began during voir dire. Defense counsel referred to O.J. Simpson during voir dire, stating that O.J. Simpson had money and was able to "get off", but that he was appellant's third attorney and was appointed by the trial court. (Tr. 48). Defense counsel's unprofessional actions continued and nearly violated ethical considerations when he attempted to pass out his business cards to the potential jurors during voir dire. (Tr. 48).
Defense counsel's unreasonable conduct did not end in voir dire, but continued during trial. Defense counsel's remarks to police officers and witnesses during cross-examination were used to attempt to establish a conspiracy against appellant, but such remarks were highly unprofessional. Furthermore, defense counsel was unreasonable and unprofessional, when he began his opening statement and abruptly rested his case, stating:
 "Mr. CARPINO: Thank you, Judge. I'd like to use their chart. Jay, would you help me with this. Put it over here.
 "Ladies and Gentlemen of the Jury, apparently they took their — they took their chart out.
 "All right. Well, this is my opening statement and they had a whole bunch of stuff up there. Maybe it's back here. Yes, it is.
 "I intend to prove that he didn't travel to Youngstown. I don't think there's any testimony on their part he traveled to Youngstown.
 "Yeah, Tiffany White, yeah, she got hurt. Well, you can read some of this, especially this one. You didn't see anything about that. They didn't prove any one of those.
 "All these places he's supposed to be with, I intend to prove he wasn't with Michael White. He was arrested with him in Florida. I intend to prove that Michael White — as soon as Jay Christian could get separated he did. He didn't waive extradition. Michael White went earlier.
 "You got to be an exorcist to do this. I intend to prove that or maybe I did prove, when I had Shauntain stand up here, you couldn't see Michael White behind him. I think you saw that.
 "I don't think they proved their case and I think I'm going to rest. I rest." (Tr. 393-394).
This statement was nothing more than an unintelligible array of confusion. Furthermore, defense counsel stated that he was going to prove several details, even though he apparently thought that appellee did not prove every element its case. This was unreasonable because defense counsel not only failed to prove any of the details which he stated he would prove, by abruptly ending his case, but he also failed to realize that appellant sat innocent until proven guilty beyond a reasonable doubt. Therefore, defense counsel did not have to prove anything if appellee failed to prove every element of its case.
This matter presents the closest case of ineffective assistance of counsel that this court has considered to date, and this court would find ineffective assistance except for the fact that appellant was not prejudiced by defense counsel's actions, under the standard for prejudice set forth in Strickland, supra. When the prosecution puts forth its case demonstrating a defendant's guilt, the defense counsel has two means by which to attack the case. The defense counsel may cross-examine the prosecution's witnesses, or the defense counsel can present its own witnesses. In this case, defense counsel thoroughly cross-examined appellee's witnesses. Furthermore, these witnesses consisted of those parties who were present on the night in question, other than appellant and White. As stated in appellant's first assignment of error, defense counsel's decision not to call appellant as a witness was a tactical decision which prevented testimonial evidence regarding prior offenses committed by appellant from reaching the jury. Furthermore, defense counsel did not believe the prosecutor proved every element of its case. Therefore, appellant did not have to present any witnesses to be found not guilty, as a defendant is innocent until proven guilty beyond a reasonable doubt.
Moreover, although the jury might have been confused when defense counsel stated that he would prove certain details of the case, only to then rest his case, the trial judge told the jury that the opening statement was not evidence. Therefore, considering all of the actions of defense counsel, such actions were clearly deficient, but nonetheless just barely passed the prejudice test set forth in Strickland, supra, as there was no reasonable probability that but for defense counsel's deficient action, the proceeding would have been different.
Although appellant did not receive ineffective assistance of counsel under the Strickland standard, it is noted that defense counsel was appointed by the trial court. Given the deficient and unprofessional conduct of defense counsel, this court recommends that defense counsel not be appointed to any future capital cases.
Appellant's fourth assignment of error is found to be without merit.
Appellant's fifth assignment of error alleges:
 "Defendant-appellant was convicted on insufficient evidence in that the mens rea required to convict him was not proven beyond a reasonable doubt, and thus the verdict rendered against him was against the manifest weight of the evidence."
In State v. Thompkins (1997), 78 Ohio St.3d 380, 387, the Ohio Supreme Court discussed the issue of manifest weight of the evidence, stating:
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. * * * ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')."
Moreover, the Ohio Supreme Court, in State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, stated:
 "* * * The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."
Furthermore, it is the obligation of the trier-of-fact to evaluate the credibility of the witnesses and determine the weight of the evidence. State v. DeHass (1967), 10 Ohio St.2d 230.
Appellant argues that appellee did not prove the necessary intent to find him guilty of aiding and abetting aggravated murder beyond a reasonable doubt. Appellant states that mere association with a person who commits a crime does not make that person an accomplice. State v. Coleman (1988), 37 Ohio St.3d 286.
In the syllabus of State v. Lockett (1976), 49 Ohio St.2d 48, (overruled on other grounds), the Ohio Supreme Court held:
 "4. If a conspired robbery, and the manner of its accomplishment, would be reasonably likely to produce death, each person engaged in the common design to commit the robbery is guilty with the principal killer as an aider and abettor in the homicide although not actually present at the time of the homicide, and a purposeful intent to kill by the aider and abettor may be found to exist beyond a reasonable doubt under such circumstances."
Furthermore, in Lockett, supra, the defendant was engaged in a common plan of robbing a victim. The defendant in Lockett, supra,
had knowledge that a gun would be used to effectuate such plan. The Ohio Supreme Court found that the facts in Lockett, supra, provided sufficient evidence of a purpose to kill although the defendant was not physically present during the shooting.
The present case is similar to Lockett, supra, because there was a common plan, which was to commit aggravated burglary against the decedent. Appellant had knowledge that White had a gun on his person while committing the aggravated burglary. (Tr. 119). Furthermore, appellant was in a position to witness White's anger over his sister's broken arm. (Tr. 119). Appellant was physically present during the shooting of the decedent and further, absconded with White after the shooting. (Tr. 211). Appellant further had knowledge that White shot the decedent because, "He had to do what he had to do." (Tr. 212). Furthermore, the trier-of-fact in the present case, the jury, was able to determine the credibility of the witnesses. DeHass,supra. Therefore, under Lockett, supra, and viewing the evidence in a light most favorable to appellee, a reasonable trier-of-fact could have found appellant guilty of aiding and abetting aggravated murder beyond a reasonable doubt. Jenks, supra.
Appellant's fifth assignment of error is found to be without merit.
Appellant's sixth assignment of error alleges:
 "The trial court committed error by failing to grant the defendant-appellant's motions for judgment of acquittal."
Crim.R. 29 provides:
 "(A) Motion for Judgment of Acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
Since appellant's conviction was proved by sufficient evidence and was not against the manifest weight of the evidence, as stated in appellant's fifth assignment of error, there was no basis for the trial court to have granted appellant's motion for acquittal. Therefore, the trial court did not err in dismissing appellant's motion for acquittal.
Appellant's sixth assignment of error is found to be without merit.
The judgment of the trial court is affirmed.
VUKOVICH, J., concurs. See concurring opinion.
WAITE, J., concurs.
 __________________________________ EDWARD A. COX, PRESIDING JUDGE