This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-Appellant Curtis E. Brown has appealed from a judgment of the Summit County Court of Common Pleas that found him guilty of murder under R.C. 2903.02(B), with a firearm specification under R.C. 2941.145. This Court affirms.
 I
On July 13, 1999, near the intersection of Delia and Madison Avenues in West Akron, Sigmund Linberger, Jr. ("the victim") was shot and killed while behind the wheel of his white Jeep Tracker. The fatal bullet, which was recovered during the autopsy, entered the outer portion of the victim's left arm and exited through the inner portion of his left arm then re-entered his left chest area. The victim also suffered a suspected superficial gunshot wound to his left upper arm. Dr. Marvin Platt testified that he believed the superficial wound was caused by a bullet that did not fully penetrate the car but left a hole in the outer driver's side panel and a mark on the interior driver's side panel. No bullet was found in the car. After the shooting, the Tracker crashed through a fence and came to rest in a neighboring yard with the victim slumped over the steering wheel.
At Appellant's trial, Betty James of 971 Delia Avenue gave an account of the shooting. She testified that as she was going to her front mailbox she saw a black man, whom she later identified in a photo line-up as Appellant, run across Madison Avenue. The man ran up to the white Tracker, which was at a stop sign facing Delia Avenue, and shot the driver with a silver gun. James testified that she heard no conversation between the driver and the man. She said that the man simply went up to the car, shot the driver, and ran. After the shooting, she dialed 911.
While the investigation into the shooting uncovered several possible suspects, eyewitness testimony, witness statements gathered during the investigation, and an informant's tip focused the police on Appellant. An arrest warrant was issued for Appellant, but he was no longer in the state. Appellant was not arrested and extradited to Ohio until March 12, 2001.
Appellant was indicted on one count of aggravated murder, R.C.2903.01(A), with a gun specification pursuant to R.C. 2941.145, and one count of murder, R.C. 2903.02(B), with a gun specification pursuant to R.C. 2941.145. The jury found Appellant not guilty of aggravated murder and its gun specification and guilty of murder with the gun specification. He was sentenced to consecutive terms of fifteen years to life for the murder and three years for the gun specification. Appellant has appealed his conviction, asserting two assignments of error.
 II Assignment of Error Number One Appellant's conviction for murder was based upon insufficient evidence as a matter of law and was against the manifest weight of the evidence.
Appellant has argued that his conviction for murder with a firearm specification was against both the sufficiency and the manifest weight of the evidence. This Court disagrees.
To determine whether a conviction is against the manifest weight of the evidence, this Court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. An appellate court that overturns a jury verdict as against the manifest weight of the evidence acts in effect as a "thirteenth juror," setting aside the resolution of testimony and evidence as found by the trier of fact. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. This action is reserved for the exceptional case where the evidence presented weighs heavily in favor of the defendant. Otten, 33 Ohio App.3d at 340.
"A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." Statev. Haydon (Dec. 22, 1999), Summit App. No. 19094, unreported at 14, appeal not allowed (2000), 88 Ohio St.3d 1482, citing State v. Gilliam
(Aug. 12, 1998), Lorain App. No. 97CA006757, unreported at 4. Additionally, it is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
R.C. 2903.02(B) provides: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of [R.C. 2903.03 or R.C. 2903.04]." Appellant was convicted of felony murder pursuant to R.C. 2903.02(B) with a firearm specification, with felonious assault as the underlying felony. Felonious assault includes "(1) Caus[ing] serious physical harm to another * * *; [or] (2) Caus[ing] or attempt[ing] to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A). A deadly weapon includes "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C.2923.11(A).
Appellant has argued that his conviction was against the manifest weight of the evidence and that the jury lacked sufficient evidence to convict him of murder. He has claimed that the manifest weight of the evidence fails to show that he knowingly shot the victim and therefore he is guilty of aggravated assault rather than felonious assault, and cannot be convicted of murder.
Elijah Butler, a friend of Appellant, testified at trial that he dealt drugs with Appellant and witnessed Appellant deal drugs to the victim. He stated that he witnessed the victim "gank" (take his drugs without paying) Appellant a few days before the shooting. Butler testified that Appellant told him he shot the victim because he "ganked" him and that he did not mean to kill him. Butler, who did not receive any deals in exchange for his testimony, denied shooting the victim because he too was "ganked" by the victim.
Brice Anthony Garrett (AKA Tone), Appellant's cousin with whom he was living at the time of the shooting, also testified at the trial. He stated that Appellant told him the victim had robbed him of money and marijuana. Garrett testified that he was not home at the time of the shooting but that he heard about it when he returned home. He said he saw Appellant later that day hiding in his backyard and that he arranged for Appellant to be driven to the north side of Akron. Garrett suffered from memory problems at trial and testified that he did not recall telling Detective King and the prosecutors that Appellant admitted killing the victim after he saw him driving down the street. Garrett did testify that Appellant told him he intended to shoot the victim in the legs.
Detective Bertina King of the Akron Police Department testified that Garrett told her Appellant admitted shooting the victim and that a man named Rob had been given the murder weapon. She testified that Garrett was the first person to give Appellant's full name as the shooter. Detective King also discussed Appellant's taped confession. In his confession, Appellant said he entered the victim's car to buy and use drugs. Appellant then stated that the victim began driving very fast and would not let him out of the car. On the tape, Appellant said that the victim demanded his money and drugs and claimed he was going to take Appellant to the police station. According to Appellant, he tried to get out of the car and he shot the victim as he was jumping out of the car. Appellant said he was trying to shoot the victim in the legs. Appellant stated that he told Garrett and Robert Higgins about the shooting.
Robert Higgins, a drug dealer from Appellant's area of town, testified that he witnessed the Tracker crash into the fence. He testified that Appellant told him he shot the victim because he had "ganked" him and that he intended to shoot him in the legs. Higgins also testified that Appellant told him about the incident where Appellant jumped out of the victim's car and that it occurred before the day of the shooting. Higgins testified that Appellant told him he was "going to get" the victim. Higgins testified that Appellant told him where he hid the gun and asked him to get rid of it for him. Higgins took the gun and later sold it to Elmer Brooks.
This Court cannot conclude that, given the evidence before it, the jury lost its way or created a manifest miscarriage of justice such that Appellant's convictions must be reversed. Under R. C. 2901.22(B), the culpable mental state of knowingly exists when a person "is aware that his conduct will probably cause a certain result or will probably be of a certain nature." The evidence presented to the jury established the knowingly element of felonious assault. The eye witness, James, testified that Appellant walked up to the victim's car and shot him. Two witnesses testified that Appellant told them he intended to shoot the victim in the legs. In Appellant's taped confession he admits to intentionally shooting the victim. The evidence before the jury established by manifest weight that Appellant knowingly caused serious physical harm to another. Appellant's contention that his conviction is against the manifest weight of the evidence is without merit.
This Court has previously noted that "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis sic.) State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported. Accordingly, having found that Appellant's convictions were not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Appellant's first assignment of error is overruled.
 Assignment of Error Number Two The trial court erred in denying [Appellant's] requested instruction to the jury on the lesser included offense of involuntary manslaughter.
In his second assignment of error, Appellant has argued that the jury could have found him guilty of aggravated assault, a fourth-degree felony, rather than felonious assault, a first-degree felony, and therefore an involuntary manslaughter instruction was required. Appellant has contended that the involuntary manslaughter instruction was warranted because aggravated assault is not an enumerated felony under the felony murder doctrine. He has therefore asserted that the trial court erred in denying the involuntary manslaughter instruction. This Court disagrees.
The standard for appellate review of the denial of a jury instruction is whether the trial court abused its discretion under the facts and circumstances of the case. State v. Wolons (1989), 44 Ohio St.3d 64, 68. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Id., quoting State v. Adams (1980), 62 Ohio St.2d 151,157.
To determine if a lesser included offense instruction was warranted, a trial court must first ascertain what constitutes a lesser included offense of the crime charged. State v. Kidder (1987), 32 Ohio St.3d 279,280. The Ohio Supreme Court has held that involuntary manslaughter is a lesser included offense of murder. See State v. Thomas (1988),40 Ohio St.3d 213, 215, certiorari denied (1989), 493 U.S. 826,110 S.Ct. 89, 107 L.Ed.2d 54. See, also, State v. Rohdes (1986),23 Ohio St.3d 225. Once a lesser included offense is identified, the court must then examine the facts and decide whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater. Kidder, 32 Ohio St.3d at 280.
Even though involuntary manslaughter is a lesser included offense of murder, a criminal defendant is only entitled to such an instruction when the evidence warrants it. Id. That is, "a charge on the lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." Thomas,40 Ohio St.3d at 216. "In making this determination, the court must view the evidence in the light most favorable to the defendant." State v. Smith (2000),89 Ohio St.3d 323, 331, citing State v. Wilkins (1980), 64 Ohio St.2d 382,388. However, "some evidence" for the lesser charge is not determinative; there must be sufficient evidence for the jury to reasonably reject the greater offense. State v. Shane (1992),63 Ohio St.3d 630, 632-33.
R.C. 2903.04(A) provides: "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." Appellant has contended that he should have received an involuntary manslaughter instruction with aggravated assault as the underlying felony. R.C. 2903.12(A), aggravated assault codified, states:
 No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly: (1) Cause serious physical harm to another or to another's unborn; (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in [R.C. 2923.11].
To determine whether the provocation was reasonably sufficient to incite the use of deadly force, "the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." State v. Deem (1988), 40 Ohio St.3d 205,211, quoting State v. Mabry (1982), 5 Ohio App.3d 13, paragraph five of the syllabus.
In this case, the trial court properly exercised its discretion in concluding that no jury could reasonably conclude that the evidence in this case supports an acquittal on the murder charge and a conviction for involuntary manslaughter, with aggravated assault as the underlying felony. The record lacks sufficient evidence of serious provocation. While Appellant's confession to the police contains statements of fear, the physical and testimonial evidence do not support Appellant's account of July 13, 1999.
The physical evidence of the crime scene and the autopsy of the victim reveal that he was shot in the left side of his body and that the car was damaged by a bullet on the driver's side. Appellant's contention that he shot the victim while jumping out of the car from the passenger's side is contradicted by the entry of the bullets into the victim's left side and the driver's side panel of the Tracker. Further, Appellant's finger prints were not found on the door of the car.
The testimonial evidence also contradicts Appellant's account of the shooting. James testified that she saw Appellant walk up to the victim's Tracker and shoot him from outside the car. Mr. Butler and Mr. Higgins testified that Appellant told them he shot the victim because he had been "ganked." Nothing in the record indicates the "ganking" occurred the day of the shooting. Further reducing the evidence of serious provocation is Mr. Higgins' testimony that Appellant stated before the day of the shooting that he was "going to get" the victim.
This Court cannot conclude that the trial court abused its discretion in finding that a jury could not reasonably find Appellant innocent of murder and guilty of involuntary manslaughter. The trial court properly determined that evidence presented does not reasonably support both an acquittal on the murder charge and an involuntary manslaughter conviction. Therefore, the trial court did not err in denying the involuntary manslaughter instruction request. Appellant's second assignment of error is overruled.
 III
Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
SLABY, P.J., BAIRD, J. CONCUR.