[Cite as *State v. Weber*, 2015-Ohio-4371.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 102342**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ROBERT O. WEBER

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-580193-A

**BEFORE:** Kilbane, P.J., Stewart, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** October 22, 2015

**ATTORNEY FOR APPELLANT**

Richard H. Drucker
820 West Superior Avenue
Suite 800
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Edward R. Fadel
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1} Defendant-appellant, Robert O. Weber ("Weber"), appeals his felonious assault conviction. For the reasons set forth below, we affirm.

{¶2} In November 2013, Weber was charged with two counts of felonious assault involving the same victim, Kevin Coughlin ("Coughlin"). Count 1 charged him with felonious assault, in violation of R.C. 2903.11(A)(1) — knowingly cause serious physical harm. Count 2 charged him with felonious assault, in violation of R.C. 2903.11(A)(2) — knowingly cause or attempt to cause physical harm to another by means of a deadly weapon (a hammer). The matter proceeded to a jury trial, at which the following evidence was adduced.

{¶3} On October 1, 2013, at approximately 3:30 p.m., Coughlin was riding his motorcycle through the city of Westlake. He was proceeding northbound on Canterbury Road, which is a two-lane road, when he stopped at a red light at the intersection of Canterbury Road and Hilliard Boulevard. Coughlin's motorcycle stalled while waiting for the traffic light to turn green. As he attempted to restart his motorcycle, he heard a car horn from behind him. A man driving a pickup truck, later identified as Weber, was screaming out his window and swearing at Coughlin. Coughlin testified that Weber shouted, "Get that piece of s**t out of the road, you a**hole. I'll run you over, mother-f****r." Coughlin turned around and said, "What's your problem?" Weber then pulled his truck right up next to Coughlin. Weber got in Coughlin's face and screamed "there's people that have to go to work. You piece of s**t. Get the f**k out

of my way. I'll run you over." Weber then continued to proceed north on Canterbury Road out of Coughlin's view.

{¶4} Coughlin testified that he reencountered Weber on Detroit Road at the intersection of Detroit and Columbia Roads, near the entrance ramp for Interstate 90 West. Coughlin was heading to the entrance ramp for Interstate 90 West, so he could go home. Coughlin pulled up next to the passenger's side of Weber's truck, which was in the lane to turn left onto Columbia Road. He banged on Weber's passenger-side window with his right hand, while on his motorcycle, and said, "Hey, see. What's your big hurry? You're no farther ahead than I am." Coughlin testified that he did not threaten Weber, nor did he have any weapons on his person or motorcycle.

{¶5} Weber then put his truck into park and began fumbling around in the backseat. He exited on the driver's side and walked around the front of his truck, with a hammer in his hand, directly toward Coughlin. Coughlin is still on his motorcycle at this point. Weber swung his hammer at Coughlin and hit him on the back of the head. Blood began to pour everywhere. Coughlin dropped his motorcycle and wrestled Weber to the ground. Coughlin took the hammer from Weber and tossed it to the side. He testified that he did not hit Weber, he just held him to the ground. Coughlin heard a male witness yell "the cops are on their way right now." He then stood up and picked up Weber's hammer and cell phone. Coughlin placed the hammer in his pocket and threw the cell phone in Weber's truck bed. Coughlin testified that blood was running down all

over his face so he got back on his motorcycle and rode to his brother's house, which was nearby. He asked his brother to call their sister, who is a nurse, for assistance.

{¶6} The Westlake police arrived to Coughlin's brother's house shortly thereafter. They gathered information from Coughlin about the incident and collected the hammer as evidence. Coughlin could not get the bleeding to stop so he went to the hospital that evening. Coughlin had to get staples to his scalp for the laceration from the hammer. He also sustained a contusion to the back of the head.

{¶7} Meanwhile, Westlake police officer Keenan Cook ("Officer Cook") responded to the area of Columbia and Detroit Roads. He located Weber's pickup truck and initiated a traffic stop on the entrance ramp to Interstate 90 West. Officer Cook testified that he approached the pickup truck with his firearm out because of the nature of the call — assault with a deadly weapon (hammer). He ordered Weber out of the truck. As he approached the truck, he observed Weber's shirt covered in blood and Weber's right shoulder appeared to be dislocated. Weber was directed to the back of his truck.

{¶8} Officer Cook attempted to gather information from Weber, but Weber was "very apprehensive about his answers." Officer Cook asked Weber about the hammer. Weber responded that he did not use a hammer in the altercation. Weber told Officer Cook that there was a motorcycle stopped in front of him on Canterbury Road. The motorcycle did not move when the light turned green, so he honked his horn and went around him. Weber proceeded north on Canterbury Road. The motorcycle caught up to him at the intersection of Canterbury and Detroit Roads. The driver of the motorcycle

("Coughlin") motioned for him to pull over into a parking lot adjacent to the intersection. Weber refused to pull over. Instead, he turned right and proceeded eastbound on Detroit Road toward Columbia Road. Coughlin then pulled up next to Weber while he was at the intersection of Detroit and Columbia, and began banging on his front passenger-side window. Weber thought Coughlin was going to break his window. He was afraid that Coughlin was going to hurt him. Weber told Officer Cook that, at this point, he had an altercation with Coughlin.

{¶9} Douglas Hawkins ("Hawkins") testified that he was traveling north through the intersection of Canterbury and Hilliard Roads in Westlake when a pickup truck passed him. He thought to himself, "[w]ell you are in a big rush to get up to the red light." As he approaches the intersection, Hawkins notices the pickup truck driver gesture with his middle finger. He later realized that the pickup driver's gesture was directed to a man on a motorcycle. Hawkins observed the motorcyclist walk from the front of the pickup truck to the driver-side door and start "talking/arguing" with the driver of the pickup truck for approximately 20 seconds. The two men then drove away.

{¶10} At the intersection of Canterbury and Detroit Roads, Hawkins noticed the motorcyclist go west on Detroit Road and the pickup truck proceeded eastbound. Hawkins also proceeded eastbound on Detroit Road. Then, at the intersection of Detroit and Columbia Roads, Hawkins observes the motorcyclist pull up next to the pickup truck, who was two to three cars ahead of him. He thought to himself that the motorcyclist "must have turned around and come this way." The motorcyclist was angry and was

yelling at the pickup driver.  The motorcyclist never attempted to get into the pickup truck.

{¶11} Hawkins observes the driver of the pickup truck exit the truck and run around the front of the truck and toward the motorcyclist with a hammer in his right hand and a striking pose.  The two men fall to the ground and are wrestling in the street. Hawkins did not see Weber actually strike the victim, but saw evidence of it based on the fact that the motorcyclist was bleeding from his head and he now had the hammer.  The only weapon observed was possessed by the driver of the pickup truck.  Hawkins got out of his car and told the two that he had called the police.  Coughlin yelled, "he hit me in the head with a hammer."  At this point, the two men separated and drove away from the intersection.

{¶12} Kathleen Ferry ("Ferry") was stopped at the intersection of Detroit and Columbia Roads when she observed a man on a motorcycle in the middle lane trying to get the attention of the driver of a pickup truck by banging on the passenger-side window. Ferry was one car length behind the motorcyclist.  The next thing Ferry observes is the driver of the pickup truck jump out of the driver-side door and run around the front of his truck.  He is holding a hammer and is running straight at the motorcyclist.  The driver of the pickup truck hit the motorcyclist in the head with his hammer.  She did not observe any weapons on the motorcyclist.  She immediately called 911.  She described the attack to the dispatcher.  The phone call was played for the jury.

{¶13} Victoria Scheidemantel testified that she stopped at the intersection of Detroit and Columbia Roads in the left turn lane directly in front of the pickup truck. She observed the incident through her rearview mirror. She observed the motorcyclist pounding on the truck window and yelling at the driver. Next, she observed the driver of the pickup truck exit his truck and start hitting the motorcyclist in the head with a hammer.

{¶14} Westlake police officer John Mauer ("Officer Mauer") testified that he responded to the scene and accompanied Weber to the hospital to gather more information. Weber informed him that the incident began at Canterbury Road and Hilliard Boulevard, and Coughlin later motioned him to a parking lot. Weber told Officer Mauer that Coughlin banged on his passenger-side window with a closed fist. Weber initially denied using a hammer. After further inquiry, he said that he used a hammer as a threat of force.

{¶15} Weber testified on his own behalf. He testified that on October 1, 2013, he was working a landscaping job and needed to unload his pickup truck. He approached the intersection of Canterbury Road and Hilliard Boulevard when he noticed a motorcyclist not moving. He honked his horn and asked, "[w]hat's going on?" Coughlin replied, "bike's broken." Weber then proceeded around Coughlin, without confrontation, and stopped at the red light. Weber testified that Coughlin pulled up next to his driver-side window when he was stopped at the light. Weber told him "some of us are trying to work." Coughlin replied, "[y]eah, some of us are trying to work to support

our hobby." The light then turned green and Coughlin "took off on his motorcycle at a pretty rapid rate of speed."

{¶16} Weber proceeded northbound on Canterbury Road behind Coughlin. As Weber approached the red light on Detroit Road, Coughlin turned into a parking lot on the left and began yelling at him to "settle this thing." Instead, Weber waved goodbye and turned right onto Detroit Road. He proceeded eastbound on Detroit Road to the intersection of Columbia and Detroit Roads where he entered the left turn lane. While he was stopped at the red light, Coughlin pulled up next to the passenger side of his pickup truck.

{¶17} The next thing he knew, Coughlin was beating on his front passenger window. Weber testified that he thought Coughlin was going to break his window. Coughlin was yelling that he wanted to beat the crap out of Weber. Weber was afraid for his life. He thought that Coughlin was going to break into his truck. Believing he was trapped inside his truck, he grabbed a hammer, exited his truck, and walked around the front of his truck toward Coughlin. He brought his hammer for protection. Coughlin was bigger than Weber. He testified that he was going to ask Coughlin to leave him alone. As he approached, Coughlin grabbed Weber. Weber then hit Coughlin in the head with the hammer in self-defense. Coughlin then slammed Weber to the ground and began to choke him. Weber suffered a dislocated shoulder. Weber testified that he denied the use of a hammer when asked by the police because he was scared.

**{¶18}** On cross-examination, Weber testified that he was too confused at the time of the incident to tell police the whole story. Weber maintained that the eyewitness testimony was incorrect. He testified that Coughlin grabbed him first and he hit Coughlin in the head with the hammer in self-defense. He further testified that he did not observe any weapons on Coughlin.

**{¶19}** At the conclusion of trial, the jury found Weber guilty of Count 2 — felonious assault with a deadly weapon. The jury found him not guilty of Count 1. The trial court sentenced Weber to 4 years in prison with 30 days of jail-time credit. The trial court ordered restitution in the amount of $6,602 and a $10,000 fine. In May 2015, the trial court granted Weber's motion for judicial release and placed Weber on a one-year community control sanction under the supervision of the probation department.

**{¶20}** Weber now appeals, raising the following two assignments of error for review.

### Assignment of Error One

The trial court erred and [Weber] was denied a fair trial and due process of the law when the trial court failed to instruct [the jury] on the lesser offense of aggravated assault in violation of [R.C. 2903.12].

### Assignment of Error Two

The jury verdict finding [Weber] guilty of the offense of felonious assault in violation of [R.C. 2903.11(A)(2)] was contrary to the law and against the manifest weight of the evidence, since the State of Ohio failed to prove essential elements of the offense, to wit: that [Weber] knowingly caused physical harm to another by use of a deadly weapon.

### Jury Instructions

{¶21} In the first assignment of error, Weber contends that the jury should have been given an instruction on the offense of aggravated assault, which is an inferior degree offense of felonious assault.

{¶22} We recognize that "[a] criminal defendant has the right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." *State v. Williford*, 49 Ohio St.3d 247, 251, 551 N.E.2d 1279 (1990). A jury instruction must be given on a lesser included (or inferior-degree) offense when sufficient evidence is presented that would allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included offense. *State v. Shane*, 63 Ohio St.3d 630, 632-633, 590 N.E.2d 272 (1992).

{¶23} In the instant case, however, Weber did not request an instruction on aggravated assault. Therefore, under Crim.R. 52(B), we review for plain error. *State v. Franklin*, 62 Ohio St.3d 118, 128, 580 N.E.2d 1 (1991). An incorrect jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus. The plain error rule is to be applied with the utmost caution and invoked only under exceptional circumstances in order to prevent a manifest miscarriage of justice. *State v. Cooperrider*, 4 Ohio St.3d 226, 448 N.E.2d 452 (1983).

{¶24} Weber contends the court should have instructed the jury on aggravated assault, in violation of R.C. 2903.12, because the evidence establishes that Coughlin

brought serious provocation upon Weber, which caused sudden passion or a sudden fit of rage on Weber's part.

{¶25} Aggravated assault is an "inferior degree" of the offense of felonious assault because the elements of the offense are identical except for the mitigating elements section in paragraph (A). *State v. Deem*, 40 Ohio St.3d 205, 208-209, 533 N.E.2d 294 (1988). Aggravated assault is defined in R.C. 2903.12, which provides that:

> (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
>
> * * *
>
> (2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance[.]

{¶26} In a trial for felonious assault, the jury instruction for aggravated assault must be given when the defendant presents sufficient mitigating evidence of serious provocation "such that a jury could both reasonably acquit defendant of felonious assault and convict defendant of aggravated assault." *Deem* at 211. Provocation, to be serious, must be reasonably sufficient to bring on extreme stress, and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surround him at the time. *Id.* at paragraph five of the syllabus, citing *State v. Mabry*, 5 Ohio App.3d 13, 449 N.E.2d 16

(1982).  Accordingly, there must be a factual basis to give a jury instruction of aggravated assault.

{¶27} In *State v. Blair*, 8th Dist. Cuyahoga No. 76511, 2000 Ohio App. LEXIS 3046 (July 6, 2000), this court found that it was not plain error for the trial court to withhold an aggravated assault jury instruction in a felonious assault trial.  We found that the fact that the defendant and victim may have had a prior history of fighting is irrelevant.  *Id.* at *8.  Further, the victim was leaving the scene when the defendant ran into his home and returned outside with a baseball bat.  *Id.*  The defendant had an opportunity to retreat.  *Id.*  We noted that even if there been some evidence of sufficient provocation, the error of not instructing the jury on aggravated assault does not constitute plain error.  *Id.* at *10.

{¶28} In *State v. Thomas*, 8th Dist. Cuyahoga No. 56293, 1989 Ohio App. LEXIS 4988 (Dec. 7, 1989), this court also found that an aggravated assault instruction was not warranted where the defendant committed a felonious assault on his girlfriend.  The defendant and his girlfriend got into an argument, which escalated to the defendant hitting the girlfriend in her face.  The girlfriend ran away and threw a pop bottle toward either the defendant or his car.  The girlfriend continued to run to a neighbor's house, but the defendant caught up to her and beat her on the head with his fist and a brick.  We found that neither the quarrelsome relationship, nor the victim's minor attempts to strike back, were reasonably sufficient, as a matter of law, to incite defendant to repeatedly beat the victim in the head with his fist and a brick.  This is especially so given the period of time

between the initial confrontation and the beating, and the fact that defendant pursued his girlfriend across the street. *Id.* at *8 -*9.

{¶29} Similarly, in the instant case, our review of the record indicates that the evidence of provocation was insufficient to support a conviction of aggravated assault. Weber's belief was not reasonable, and provocation was not sufficient to incite him. There was no witness testimony that Coughlin attempted to get into Weber's vehicle or that he possessed a weapon. The witnesses testified that after Coughlin banged on Weber's front passenger side window, Weber exited his truck and ran straight toward Coughlin with a hammer in his hand. Weber then hit Coughlin in the head with the hammer. Weber contends that he exited his vehicle with a hammer in self-defense. The testimony, however, revealed that Weber was in the position to stay in his vehicle or retreat from the intersection. Instead, he exited his vehicle and attacked Coughlin. Accordingly, we are unable to conclude that, but for the aggravated assault instruction, the outcome would clearly have been otherwise.

{¶30} Thus, the first assignment of error is overruled.

Manifest Weight of the Evidence

{¶31} In the second assignment of error, Weber argues that his felonious assault conviction is against the manifest weight of the evidence.

{¶32} A manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. The

Ohio Supreme Court in *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, has stated:

> [T]he reviewing court asks whose evidence is more persuasive — the state's or the defendants? * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." [*Thompkins* at 387], citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

{¶33} An appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin*.

{¶34} We note that when considering a manifest weight challenge, the trier of fact is in the best position to take into account inconsistencies, along with the witnesses's manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible. *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26; *see also State v. Lilliard*, 8th Dist. Cuyahoga Nos. 99382, 99383, and 99385, 2013-Ohio-4906, ¶ 93 (In considering the credibility of witnesses on a manifest weight challenge, an appellate court is "guided by the presumption" that the jury, or the trial court in a bench trial, is "'best able to view the witnesses and observe their demeanor,

gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984)). Therefore, we afford great deference to the factfinder's determination of witness credibility. *State v. Ball*, 8th Dist. Cuyahoga No. 99990, 2014-Ohio-1060, ¶ 36.

{¶35} In the instant case, Weber was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides that: "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance[.]" He contends that his conviction is against the manifest weight of the evidence because the evidence at trial established that Coughlin suffered from road rage and pursued Weber, seeking to provoke him in a physical altercation. He further contends the evidence established that he acted in self-defense.

{¶36} Weber's version of the events was not credible in light of the evidence to the contrary. The testimony of Hawkins, Ferry, and Scheidemantel corroborated several material aspects, including the majority of Coughlin's recollection of the events at the intersection of Columbia and Detroit Roads. These witnesses testified that Weber hit Coughlin in the head with the hammer while he was still on his motorcycle. The 911 call made by Ferry details in a live account the incident as it unfolded before her. On the recording, she states that "a man hit another man with a hammer." Moreover, Weber was evasive with officers directly after the incident, including denying the use of a hammer.

**{¶37}** Based on the foregoing, we cannot say the jury clearly "lost its way" and created such a manifest miscarriage of justice that Weber's conviction must be reversed and a new trial ordered.

**{¶38}** Accordingly, the second assignment of error is overruled.

**{¶39}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

MELODY J. STEWART, J., and
ANITA LASTER MAYS, J., CONCUR